## DENNIS WOODBURY v. STATE

No. 34,658.   May 23, 1962

*Billy J. Moore,* Ennis, and *Forrester Hancock,* Waxahachie, for appellant.

*Weldon Holcomb,* Criminal District Attorney, Tyler, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, life.

Officers were called to investigate a burglary of a Vine Street drug store in Tyler early in the morning of November 9. One of them answering the call found deceased's automobile parked on a side street near the Vine Street store. In it, he found blood and a woman's black scarf.

The operator of a nightwatching service in the city passed through this same side street shortly before midnight, or thereafter, and observed appellant standing by the side of a 1956 black Oldsmobile bearing license number RF 9234 and observed appellant's co-principal Joan Brock seated therein. Because of the suspicious nature of the circumstances, he jotted down the make, year and license number of the automobile and transmitted such information to the officers.

Two ambulance drivers observed a 1956 black Oldsmobile parked back of their funeral home property in another part of the city about midnight on the night in question, became suspicious, shone their lights thereon, and were informed by appellant's co-principal that they were looking for their victim (who lived in a nearby apartment house). Both she and appellant were identified. She was dressed in tight black trousers, black upper garment, and black scarf over her head.

It was shown that the Vine Street drug store's supply of narcotics and barbiturates was missing when the store was opened for business on the morning of November 9, and a number of items were identified at the trial by the person who had placed the store's code thereon.

It was shown that appellant's wife was granted permission to park appellant's Oldsmobile in a carport at an address other than the one where she and appellant lived in the city of San Antonio, and it was discovered at such address by the San Antonio police and Tyler peace officers on the same day. Immediately in front of the 1956 Oldsmobile, license number RF 9234, which appellant's wife had placed in the carport, in an elevated storage cabinet, a box containing a quantity of narcotics and barbiturates was found and identified at the trial as having come from the Tyler drug store owned in part by the deceased. Appellant and his co-principal were arrested at appellant's home in San Antonio by virtue of a warrant and were returned to Tyler.

After their incarceration at Tyler, Joan Brock tried first to take the officers to the place where deceased's body might be found but was unsuccessful in her efforts. Appellant's aid was then secured and, after first having marked the location on a map, he directed the officers to a spot 76 feet from a side road in Angelina County, where in heavy underbrush appellant said, "There he is," and deceased's body was found with a bullet wound in the chest and one in the head, and a cord twisted tight around his throat with the aid of a screwdriver.

State's witness Joan Brock, upon being returned from the Department of Corrections where she was serving a life sentence for this offense, gave at the trial this version of the events connected with this homicide. She stated that in the course of plying her trade as a prostitute, she became acquainted professionally with the deceased, that he later took her to his drug store where he delivered certain narcotics to be sold by her in Houston, and an even division of the proceeds of the sale to be effected. Some time later, while in San Antonio, she spoke to appellant about the possibilities of securing money and narcotics from deceased. He agreed to accompany her and gave her a pawn ticket and some money with which she reclaimed a pistol from a pawn shop. En route to Tyler, she called their victim and told him she was on the way, instructing him to meet her at the drug store after closing time in order that they might consummate further narcotic transactions. When they arrived in Tyler, they were unable to find their victim or his automobile and went to his apartment in their search, at which time she was questioned by two ambulance drivers. They later saw their victim's automobile in front of the Vine Street store; they parked in a side street, and she entered the store alone, asked their victim if he had "the stuff" for her, and when he replied that he had some she "threw down on him" with her pistol. When he approached her, he was instructed by appellant, who was by that time inside the store and behind their victim, to "freeze". When their victim turned toward appellant, she struck him in the head with her pistol, causing him to fall bleeding. While appellant held a pistol on their victim, she rifled the narcotics box and the cash register. She left the store with the narcotics, and appellant followed with their victim, with his hands bound behind him. They drove their victim's car to the side street and transferred to appellant's automobile. Appellant borrowed her scarf in order to wipe off his fingerprints, and she learned much later that he had left it in their victim's automobile. They then drove away from Tyler, and en route their victim freed his hands and assaulted her, whereupon she struck him several times on the head with the pistol she was carrying, causing him

to crumple on the floorboard. At this juncture, appellant expressed his intention of killing their victim, and she twisted a cord around their victim's neck and used a screwdriver which appellant handed her as a lever to tighten the same. After looking at several places where they might dispose of the body, they arrived at a spot covered with thick underbrush and drug their victim some distance into the woods, where she shot him in the chest, and then, at appellant's suggestion, returned and shot him in the head. They departed and, after driving to Corpus Christi to visit a friend who was in jail in that city, returned to San Antonio to appellant's home, where sometime later they were arrested.

Appellant did not testify, but called one witness who proposed to testify as to some declaration made to him by appellant concerning a contemplated trip to Tyler and offered in evidence Joan Brock's confession made to the assistant district attorney at Tyler shortly after her arrest. The confession tracks her testimony concerning the entire transaction, except that she says therein she bought the gun in San Antonio and fails to mention that appellant furnished the money and that it was his pistol which had been pawned, and she attempts to exonerate appellant by stating that she told him she was going to Tyler to fill a prostitution date and would share the proceeds with him. In that statement, she relates that she alone entered the drug store and that she drove their victim to the side street where appellant was waiting. She recounted in such statement that from that point forward appellant acted under her direction and because she was threatening him with her pistol. He further introduced into evidence a handwritten note written by Joan while in the Tyler jail and smuggled to him in a magazine, which recites the text of the confession she had given the district attorney, together with certain personal remarks of no probative value.

We have concluded that the evidence is sufficient to corroborate the testimony of the accomplice and sufficient to authorize the jury to accept her testimony given at the trial and to disbelieve the defense presented.

Appellant's one bill of exception incorporates all his informal bills. We have examined each with care but have concluded that none reflects reversible error and that a discussion thereof would not add to the jurisprudence of this State.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.