**Dennis WOODBURY, Petitioner-Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 27871.**

United States Court of Appeals, Fifth Circuit.

May 7, 1970.

Rehearing Denied July 2, 1970.

Fletcher L. Yarbrough, Dallas, Tex. (Court-appointed) for petitioner-appellant.

Dennis Woodbury pro se.

Crawford C. Martin, Atty. Gen. of Texas, Charles T. Rose, Charles R. Parrett, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, AINSWORTH, and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

Dennis Woodbury, petitioner in this habeas proceeding, and Joan Brock were indicted in Angelina County, Texas, in December 1960 for the murder of William S. Carpenter, a druggist in Tyler,

Texas. On the night of November 8, 1960, Brock arranged to meet Carpenter at his drugstore after he had closed it. Both Brock and Woodbury had guns. They entered the drugstore, struck Carpenter on the head, and took money from the cash register and narcotics from the shelves. When they left the store they placed Carpenter in the back seat of the car with Brock. Woodbury drove out the highway to a secluded spot in Angelina County where they threw Carpenter across a fence and shot him in the chest and head. They then returned to Woodbury's residence in San Antonio.

Tyler police traced the car to Woodbury thanks to the alertness of a nightwatchman who had seen the car parked by a supermarket and had taken down the license number. San Antonio police picked up Woodbury at about 1:00 a. m. on November 10, 1960. He was taken to the city jail and booked, but not questioned at that time. While in jail he was permitted to use a telephone to attempt to reach local attorneys.

Brock pleaded not guilty to the offense of murder with malice, was tried in the District Court of Angelina County, Texas, found guilty by the jury, and sentenced to a maximum term of life imprisonment. Woodbury was tried on the same charge but the trial ended in a mistrial when the jury could not decide on the punishment. He was later retried in the District Court of Ellis County, Texas, found guilty, and sentenced to life imprisonment. On appeal, the Texas Court of Criminal Appeals sustained the conviction. Woodbury v. State, 1962, 172 Tex.Cr.R. 379, 357 S.W.2d 399. Brock who had already been convicted, testified at the second but not the first trial.

Petitioner first filed an application for writ of habeas corpus in the 175th District Court of Bexar County, Texas. The court denied his application, with instructions that he file an application in the Court of Criminal Appeals. Petitioner next filed his application for writ of habeas corpus with the Texas Court of Criminal Appeals. This application was denied without written order on August 31, 1965. March 10, 1967, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division. April 10, 1967, that court held a pre-trial hearing in this matter. At the hearing petitioner was represented by an attorney appointed by the court. Before the court at that time was a copy of the transcript of the proceedings in the District Court of Ellis County, Texas, the brief filed in the Court of Criminal Appeals on behalf of petitioner, the brief filed in the Court of Criminal Appeals on behalf of the State of Texas, the opinion of the Court of Criminal Appeals affirming the judgment of the trial court, and the statement of facts from the state court.

After consideration of the discussion at the pre-trial hearing on April 10, 1967, and after consideration of all the records, the court, on April 21, 1967, ordered petitioner's application dismissed. From this Order of Dismissal, petitioner appealed to this Court, which vacated the judgment of the lower court and remanded the case with instructions to dismiss without prejudice to petitioner's right to reapply in the State Court in which he was convicted, 395 F.2d 189. This Woodbury did. On September 4, 1968, his writ application in the 40th Judicial District Court of Ellis County, Texas, was denied with the notation: "foregoing dismissed because matters alleged are deemed to be res judicata, coram nobis previously passed on, and not in the interest or fairness of justice." On November 15, 1968, petitioner's writ in the Court of Criminal Appeals was denied. On January 28, 1969, he reapplied for a Writ of Habeas Corpus in the United States District Court for the Northern District of Texas. After a full evidentiary hearing, the district court denied the petitioner's application for habeas corpus relief. We affirm.

\* \* \*

(1) The petitioner argues that his warrantless arrest was illegal be-

cause the arresting officers did not have sufficient probable cause to believe that a felony had been committed. The facts that were developed at Woodbury's state court trial[1] and at his hearing in the district court clearly indicate that the arresting officers had sufficient knowledge of facts "to justify a man of reasonable caution and prudence in believing that the arrested person ha[d] committed * * * an offense".[2] Miller v. United States, 5 Cir. 1966, 356 F.2d 63, 66, cert. denied, 384 U.S. 912, 86 S.Ct. 1357, 16 L.Ed.2d 365. See United States v. Trabucco, 5 Cir. 1970, 424 F.2d 1311, Part II.

■ (2) Woodbury contends that he was not advised of his right to consult with an attorney and that he was physically and mentally coerced into making incriminating statements and leading the authorities to the location of the decedent's body. There is no merit to these contentions. When Woodbury was arrested during the early morning hours of November 10, 1960, in San Antonio, Texas, he was not at that time questioned by any of the arresting officers, nor were any statements made by him. He was afforded an opportunity to consult with an attorney. Woodbury did in fact secure the services of an attorney who filed a writ of habeas corpus on his behalf. Woodbury himself testified that at no time during his initial incarceration was he subjected to either physical or mental abuse.

■ (3) By the time Woodbury was placed in the custody of the Tyler authorities for transfer to Tyler, a warrant for his arrest had been issued. He was not questioned during the trip to Tyler, nor was he questioned upon his arrival and incarceration. Woodbury was questioned for a limited period of time on both November 11 and 12. The district court found that Woodbury was not physically or mentally abused during this period and that the responses elicited from him were not in any way incriminating. The evidence supports these findings.

■ (4) Woodbury pinpointed on a map the location of the decedent's body and led Tyler authorities to that location. This does not appear to have been the result of physical or mental coercion. To the contrary, it was consistent with Woodbury's defense that Joan Brock coerced him into assisting her in murdering the decedent.[3] Her confession bears out Woodbury's defense. After a careful study of the record, we find that the to-

---

1. Woodbury v. State, 172 Tex.Cr.R. 379, 357 S.W.2d 399 (1962).

2. At the time Lt. Elliott of the Tyler police called Lt. Dunaway of the San Antonio police, Lt. Elliott had information that the Carpenter-Francis Drugstore had been robbed, that blood was found on the floor and sink, that the owner of the drugstore, Mr. Carpenter, was missing, that a woman's black scarf was found in his car which was still parked in front of the store, that a man and woman (the woman had a black handkerchief on her head) were seen in a black Oldsmobile at Carpenter's apartment looking for Carpenter, and that a night watchman in Tyler had taken the license number of a black 1956 Oldsmobile, registered in Woodbury's name and occupied by a man and woman (later identified as Woodbury and Brock).

3. Woodbury asks this Court to believe that he agreed to find the body because of his concern for Joan Brock. He also asks this Court to believe that her first statement after leaving the drugstore was "[drive or] I'll blow your head off". Brock allegedly stated that at the time they left Tyler, she was holding a gun on Woodbury; that she put the gun between his eyes and told him to drive; that after they threw Carpenter over the fence, Woodbury froze, and she told him to move on or she would kill him.

In one breath this Court is asked to believe this fairy tale that the only thing Brock cared about was getting Woodbury out of trouble and keeping him from serving time or getting the chair. In the next breath he asks this Court to believe that he was so mentally upset by what Joan Brock told him about police beating on a bucket on her head that he agreed to lead officers to the body to save Joan Brock. This in light of the fact that only the day before she had supposedly threatened to shoot him several times and he had called her insane.

tality of the circumstances negate any inference that Woodbury was under any mental or physical coercion that would tend to overbear his free will. Davis v. North Carolina, 1966, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895.

■ (5) Woodbury contends that Joan Brock was coerced into testifying against him at his trial, thereby denying him a fair trial. The testimony of the prosecuting attorney, Mr. Hulen Brown refuted this claim. This issue was fully argued in the habeas hearing. Although the district court made no specific finding as to this question, it is evident that the court discredited Joan Brock's testimony.

■ (6) Woodbury argues that the introduction into evidence of a gun found in his home was error since it was not seized under proper search warrant. The search warrant, which was introduced into evidence, was issued to search Woodbury's home for narcotic drugs which were taken from the decedent's drug store. Woodbury argues that the gun could not have been seized as an instrumentality of the crime of murder because the officers at that time had no knowledge of the death of the decedent. This argument however overlooks the fact that Woodbury was in possession of the gun when both he and Joan Brock entered and robbed the drug store of narcotics, which was the subject of the search warrant. Clearly then the officers had the right to seize the gun as an instrumentality of the robbery which the officers knew had been committed.

■ (7) Narcotics that were allegedly taken from the drugstore were found at the residence of a Mrs. Sandra Durbin. Woodbury asserts that the seizure of these drugs without a search warrant and their admission into evidence violated his constitutional rights. The uncontroverted facts clearly establish that Mrs. Durbin was living at the residence and was in custody and control of the premises and that she had the authority to give the officers her consent to search the premises. The narcotics were found

in the carport area within the curtilage. No further discussion is necessary however, for United States v. Thompson, 5 Cir. 1970, 421 F.2d 373 dictates that Woodbury does not have standing to challenge the search and seizure of the narcotics. Cf. United States v. Bankston, 5 Cir. 1970, 424 F.2d 714.

■ (8) Woodbury's final argument is that testimony of a police officer as to his observation of blood stains found on the back seat of Woodbury's automobile was the product of an illegal search and seizure. The blood stains were in plain view and were observed by the police officer without entering the vehicle. No illegal search therefore occurred. Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.

Contrary to Woodbury's contentions, the district judge was diligent and eminently fair in considering and deciding all of the petitioner's allegations of constitutional error.

The judgment of the district court is affirmed.