**Merna Argovitz KANN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05-84-00024-CR, 05-84-00025-CR.**

Court of Appeals of Texas, Dallas.

May 22, 1985.

**158**

Mike Barclay, Roy L. Merrill, Jr., Dallas, for appellant.

Henry Wade, Crim. Dist. Atty., Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for appellee.

Before CARVER, ALLEN and HOWELL, JJ.

ALLEN, Justice.

Merna Argovitz Kann appeals her conviction in two cases for possession of marijuana and codeine. In two grounds of error, she maintains that the trial court erred in overruling her motion to suppress evidence because such evidence was seized pursuant to an illegal search in violation of: (1) the Fourth and Fourteenth Amendments to the United States Constitution; and (2) Article I, Section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure. In her third ground of error, she contends that the search warrant and supporting affidavit failed to show probable cause. We agree with appellant's second contention, that the TEX.CONST. art. I, § 9 and TEX.CODE CRIM.PRO.ANN. art. 38.23 (Vernon 1979) mandate the exclusion of the evidence in question and find that ground dispositive of this appeal. Accordingly, we reverse the judgment of the trial court.

Evidence developed at the pretrial hearing in support of appellant's motion to suppress evidence reflects that on September 27, 1982, Richardson Police Officer Melody Acord received a telephone call from an Irving police officer by the name of Myers. Officer Myers told Officer Acord that he had just received information from an informant that marijuana was growing in the back yard of a residence on Towne House Street in Richardson, and that the occupant's first name was Merna. Officer Acord then looked over the water log for the street in question, found the name Merna Kann and her address at 601 Towne House Street. The officer drove to the address and found the residence to be a single family town house. The officer proceeded to drive down the alley until she was behind the town house. She was unable to view appellant's back yard from the alley because a six foot wooden fence blocked her line of vision. Appellant's carport occupied the space between the alley and the fence. A closed gate in the fence was located at the rear of the carport. Acord walked the length of appellant's carport to the fence and by bending down near the fence and peering through a hole, was able to recognize marijuana plants growing in pots in appellant's back yard. Acord included what she had seen in an affidavit made for the purpose of procuring a search warrant.

The appellant contends that Officer Acord, before peeking through appellant's fence, did not have sufficient information to justify a search warrant. The only information Acord had before she peeked through the fence was a telephone call from an officer, who she did not know personally, that an anonymous tipster had reported that someone on Towne House Street named Merna was growing marijuana in her backyard. This information, without a doubt, falls short of establishing probable cause for a search. The only information contained in the affidavit which provided probable cause for the issuance of the search warrant on the appellant's premises was that Acord had seen marijuana growing in appellant's backyard. Appellant maintains that Acord's action in going into her carport and peering through her fence to see her backyard without a warrant constituted an illegal search and that through that search Acord obtained the essential information for her affidavit. Appellant further contends that since the search warrant was a product of the prior illegal search, the seizure of evidence incidental to the search warrant was also illegal and must be excluded. Thus, appellant argues that the warrant cannot justify

admission into evidence of the seized contraband. We agree with appellant.

■ At the outset, we acknowledge that Article I, Section 9 of the Texas Constitution and the Fourth Amendment of the Federal Constitution are, in all material aspects, the same. *Crowell v. State*, 147 Tex.Cr.R. 299, 180 S.W.2d 343, 346 (1944). Further, Article I, Section 9 of the Texas Constitution is to be construed in harmony with the Supreme Court's opinions interpreting the Fourth Amendment. *Brown v. State*, 657 S.W.2d 797, 799 (Tex.Crim.App. 1983). We recognize, however, that states are free to accept or reject federal holdings and to set for themselves such standards as they deem appropriate so long as the state action does not fall below the minimum standards provided by federal constitutional protections. *See Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In adherence to this principle, Texas has established its own exclusionary rule set forth in article 38.23. *Brown*, 657 S.W.2d at 799.

■ Since the decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the following two-fold inquiry has been used to determine whether a search complies with the Fourth Amendment: (1) whether an individual, by his conduct, exhibits an actual, subjective expectation of privacy; and (2) whether that expectation of privacy is one that society is prepared to recognize as reasonable. *Oliver v. United States*, 466 U.S. 170, 184, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984); *Smith v. Maryland*, 442 U.S. 735, 740–741, 99 S.Ct. 2577, 2580–2581, 61 L.Ed.2d 220 (1979). No single factor, however, determines whether an individual may legitimately claim, under the Fourth Amendment, that a place should be free from government intrusion not authorized by warrant. *Oliver v. United States*, 104 S.Ct. at 1741. The expectation of privacy

test has, to an increasing extent, discarded fictional property concepts in resolving the issues of privacy and public security. *Texas v. Gonzales*, 388 F.2d 145, 148 (5th Cir.1968). Thus, the validity of a search does not turn on trespass law.[1] *Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). To violate the Fourth Amendment, there must be an actual intrusion into a constitutionally protected area. The distinction between open field and curtilage is of assistance in determining the existence or not of reasonable privacy expectations. *United States v. Williams*, 581 F.2d 451, 453 (5th Cir. 1978).

■ Curtilage is "the land immediately surrounding and associated with the home" and warrants the same Fourth Amendment protections that attach to the home. *Oliver v. United States*, 104 S.Ct. at 1742; *accord, Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App.1979). On the other hand, no legitimate expectation of privacy extends to an open field, which may be defined as "any unoccupied or underdeveloped area outside the curtilage" of a dwelling. *Hurwitz v. State*, 673 S.W.2d 347, 349 (Tex.Crim.App.1984) (quoting *Oliver v. United States* at 104 S.Ct. at 1742 and n. 11).

■ Following the definition of curtilage set out in *Oliver*, we hold that the curtilage surrounding appellant's home encompassed her carport. *See Woodbury v. Beto*, 426 F.2d 923, 927 (5th Cir.1970). The carport was adjacent to appellant's back yard and was separated from it by only a fence with a gate in it. The fence blocked view of the back yard from the alley. Moreover, appellant owned the land on which the carport was situated and maintained control over the use of the carport. She had personal belongings in the carport. Therefore, Officer Acord invaded appellant's curtilage

---

**1.** However, the Fifth Circuit, at least has not hesitated to hold a search illegal where the government agent trespasses in order to obtain his plain view. *United States v. Jackson*, 588 F.2d 1046, 1053 (5th Cir.1979), (citing *United States v. Davis*, 423 F.2d 974 (5th Cir.1970); *Texas v. Gonzales*, 388 F.2d 145 (5th Cir.1968); *Brock v. United States*, 223 F.2d 681 (5th Cir. 1955).

when she crossed the carport to peer through a small hole in appellant's fence.

Whenever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy. *United States v. Jackson*, 588 F.2d 1046, 1053 (5th Cir.1979); *Williams*, 581 F.2d 451. Accordingly, "warrantless searches are improper absent exigent circumstances, at least when the investigating officers have intruded upon the curtilage for the purpose of conducting a search for criminal activity." *United States v. Williams*, 581 F.2d 451, 453 (5th Cir.1978); *see also United States v. Van Dyke*, 643 F.2d 992, 993 (4th Cir.1981); *United States v. Jackson*, 585 F.2d 653, 660 (4th Cir.1978) (dictum); *United States v. Davis*, 423 F.2d 974, 976–77 (5th Cir.), *cert. denied*, 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1970).

In addition to the numerous federal circuit cases, the Texas Court of Criminal Appeals has stated that a warrantless search of an individual's back yard may withstand constitutional scrutiny only when the State shows that an exceptional situation exists at the time of the search. *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App.1979). Even if an officer has probable cause to conduct a warrantless search, an exceptional situation is still necessary in order to uphold the validity of that search. *Gonzalez*, 588 S.W.2d at 360.

In the present case, the State does not contend, nor do we find, that any exceptional circumstances existed at the time of the officer's intrusion onto appellant's curtilage. The burden of proving the reasonableness of a warrantless search is on the State. *DeLao v. State*, 550 S.W.2d 289 (Tex.Crim.App.1977); *Hooper v. State*, 533 S.W.2d 762 (Tex.Crim.App.1975). The evidence presented at the hearing on the motion to suppress is insufficient to discharge this burden. Therefore, we hold that the Officer's search of appellant's back yard violated Article I, Section 9 of the Texas Constitution and that the use of the information gained by the initial unlawful search was in violation of TEX.CODE CRIM.PROC.ANN. § 38.23 (Vernon 1979).

It appears to us that the search made of appellant's home under the search warrant was but a continuation of that illegal search which the officer instituted without any warrant when she entered upon appellant's premises and peeked through her fence. In any event, the necessary information contained in the affidavit for the search warrant was illegally obtained, and therefore, makes the entire search illegal. We hold that evidence obtained by reason of the search is rendered inadmissible and that the trial court erred in overruling appellant's motion to suppress the evidence. Therefore, we reverse the judgment of the trial court.

Reversed and remanded.

HOWELL, J., concurring.

CARVER, J., dissenting.

HOWELL, Justice, concurring.

Believing that the disposition of the instant case is controlled by *Gonzalez v. State*, 588 S.W.2d 355 (Tex.Crim.App.1979), I concur with the majority opinion. The officers in *Gonzalez* came to the defendant's rural home for the purpose of general inquiry. They parked in the driveway and knocked on the front door. Receiving no response, they began inspecting the yard. One officer followed a well-beaten path to a dilapidated outhouse. Immediately outside the outhouse, he saw marijuana "residue" laying on the ground. He then shined his flashlight through the cracks in the outhouse and saw a large quantity of marijuana. Based on the officer's observation, a warrant was secured and conviction ensued, but it was overturned on appeal.

The *Gonzalez* court's distinction of its prior authority, *Long v. State*, 532 S.W.2d 591 (Tex.Crim.App.1976) is particularly instructive. In *Long*, the officers also drove to a farmstead for the purpose of inquiry and received no response to their knock at the door nearest the driveway. One of the officers proceeded around the house and knocked on the opposite door where he

likewise received no response. As he returned around the house to his car, he smelled the odor of marijuana from an open window. A warrant based upon his observation and a subsequent conviction were upheld. The distinction given in *Gonzalez:*

> This Court held that the initial inquiry in *Long* was not a search.... Had the warden in the instant case seen the contraband as he returned to his car, *Long* would indicate that there was no illegal search. The warden did not turn to leave after receiving no response to his inquiries.... [I]nstead of leaving, he initiated a search for ... violations.

*Gonzalez,* 588 S.W.2d at 359–360.

If, as held in *Gonzalez,* a random walk through the suspect's yard, pursuant to no response at the door, engaged in for the purpose of uncovering any indications of unlawful conduct, constitutes an illegal search, then one cannot escape the conclusion that it is also illegal for an officer to travel through an unenclosed carport and peer through a small hole or gap in a wood fence for similar purposes. No legitimate distinction can be drawn between *Gonzalez* and the case at bar. Peering through cracks in a fence is indistinguishable from peering through cracks in an outhouse. In each case, the key element is that neither officer could have obtained the evidence except through a breach of the curtilage. Both officers were in a place where they had no right to be.

The reversal in the subsequent case of *Wheeler v. State,* 659 S.W.2d 381 (Tex. Crim.App.1982) re-enforces the foregoing view. In *Wheeler,* the officers, only after several unsuccessful attempts, managed to observe marijuana in defendant's greenhouse by going onto adjoining property (with that owner's consent) and by peering through cooling-fan louvers in the greenhouse; which feat was only possible with the aid of very high-powered binoculars. Again, there is no apparent difference between peering through cracks in a fence and peering through cooling-fan louvers. *Wheeler* was a close decision because the officers did not physically enter the defendant's premises, but the court strongly inferred that the search would clearly be bad if any unauthorized entry whatever had been made upon the defendant's premises.

*Gonzalez* is consonant with the ancient doctrine of trespass *ab initio.* An officer, or any other member of the public, is authorized by well established community custom, to enter premises by the indicated usual route for the purpose of knocking on the front door, but once he deviates from this purpose, the officer loses his status as an invitee. He has no right to be there and any search whatever becomes illegal. The carport in the present case was completely open, but it was nevertheless an area where the officer had no right to be present. The only reason for walking through the carport was to search for suspected marijuana by means of peering through a small aperture in the fence. Entry into a protected area was integral to the search; no view through the fence could have been obtained without it.

If this case is to be decided upon federal constitutional principles, *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), urged the dissent, must either be followed or distinguished. I am not satisfied that a federal court trying a violation of federal law would uphold this particular warrant on *Leon* principles, but the inquiry is unnecessary. Texas law presently controls. The fact that this decision is based upon Texas authority distinguishes *Adams v. State,* 683 S.W.2d 525 (Tex.App.—Dallas 1984, order for rev. filed). This court there assumed, rather than decided, that *Leon* was applicable to a conviction occurring in a Texas court. Inasmuch as Adams' sole contention was that her federal constitutional rights had been violated, it was perhaps necessary to construe and apply *Leon.* However, the outcome of the case in hand can and should be bottomed on state law alone.

*Long, Gonzalez* and *Wheeler* all reiterate and freely recognize the established Texas law. If a warrant is based upon illegally secured evidence, the evidence se-

cured through the warrant must be excluded. Before *Leon,* this was the unquestioned Texas law. When the United States Supreme Court announces a decision more favorable to the accused than the established Texas law, the Supreme Court must be followed. That rule is presently inapplicable. In all other instances, we must look to the decisions of the Texas Court of Criminal Appeals for guidance. The dissent does not undertake to predict that the Court of Criminal Appeals will overrule established Texas precedent and will adopt the *Leon* rule as a part of Texas practice. Any decision by this court based upon *Leon* as applied to Texas authority would be incomplete without such a finding.

I find no foreshadowing of the rule in *United States v. Leon* anywhere in the Texas cases. Any question regarding the adoption of the *Leon* rule in Texas should be left to the Texas Court of Criminal Appeals.

CARVER, Justice, dissenting.

Merna Kann appeals her conviction in two cases for possession of marijuana and codeine urging that the only evidence of her guilt should have been suppressed because it was obtained in violation of her Fourth Amendment right to privacy. I would reject Kann's complaint of error and affirm.

The record reflects that officers executing a search warrant of Kann's townhouse found 46 growing marijuana plants in a fenced back yard, marijuana joints in Kann's purse, and loose marijuana leaves and seeds on a coffee table. The search warrant was issued by a magistrate in reliance upon an affidavit of an Officer Acord of the Richardson police substantially stating that she received a telephone call with the caller identifying himself as Officer Myers of the Irving Police; that an informant had told him (Myers) that a woman named Merna was growing marijuana in the back yard of a house on Towne House Lane in Richardson; that she (Acord) had found a Merna Kann subscribing to city water service at 601 Towne House Lane.

At the subsequent suppression hearing it was further developed that she (Acord) had driven to the street location and had found that No. 601 was one of a block-long series of two-story town houses each with an open front yard, no side yard, a fenced back yard, and outside of the fence, a block-long continuously built series of carport spaces entered from an alley; and that she (Acord) had walked the depth of the carport and peeked through a natural space in the fence of No. 601 and had seen growing marijuana plants which she recognized from her prior training. On the basis of the evidence found when the warrant was executed, Kann was convicted.

Kann argues that she had a "constitutionally protected reasonable expectation of privacy" in her fenced back yard which society, and its law enforcement officers, were bound to accept as "justifiable", as in *Oliver v. United States,* —— U.S. ——, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984), and that her motion to suppress should have been sustained. The State responds that the magistrate's warrant for the search of Kann's premises renders the search reasonable, rather than unreasonable, in keeping with the Fourth Amendment. The State further argues that, whether or not it is subsequently determined that the officer may have "unreasonably" peeked through Kann's fence in order to make her affidavit to the magistrate, the exclusionary rule urged by Kann is inapplicable to evidence discovered in the execution of the magistrate's warrant. I would agree with the State.

The history of the exclusionary rule urged here by Kann is recited in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As *Leon* makes clear, the rule was formulated and imposed by the Court, not the Constitution, 104 S.Ct. at 3412; the Court's prior opinions erroneously implied that the rule was a necessary corollary to the Fourth Amendment or that the rule was required by the conjunction of the Fourth and Fifth Amendments, *Id.* at 3412; the rule was designed to operate through its deterrent

effect upon law enforcement officers but creates no personal constitutional right in the person aggrieved, *Id.* at 3412; the rule is not to be applied on a *per se* or *but for* basis but only where the deterrent effect is more desirable than the truth-finding function of the judge and jury, *Id.* at 3413. *Leon* directs that the rule is to be applied by balancing the "social costs" between the transgressions of law enforcement officers unpunished and a guilty defendant unpunished. *Id.* at 3413. *Leon* perceives that the Court's prior opinions have already directed that the rule is *not* to be applied where "the connection between police misconduct and evidence of the crime may be sufficiently attenuated ... that the deterrent effect of the exclusionary rule no longer justifies its cost." *Id.* at 3415.

The issue addressed in *Leon* was whether the rule should be applied to exclude evidence of guilt discovered under a search warrant duly issued by a magistrate, but which search warrant was subsequently held to be invalid. *Leon* reasons that the rule was to be applied to officers, not magistrates, as a deterrent, *Id.* at 3417; but that the deference given the magistrate's warrant was not "boundless," *Id.* at 3417; and that the rule might yet be applied if (1) the affidavit upon which the magistrate acted was knowingly or recklessly false, (2) the magistrate did not perform his "neutral and detached function" but served "merely as a rubber stamp for the police"; or (3) there was the absence of any substantial basis for determining the existence of probable cause. *Id.* at 3417.

*Leon* holds:

We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms. "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *Illinois v. Gates,* 462 U.S. [213], at 267, 103 S.Ct. [2317], at 2347 [76 L.Ed.2d 527] (WHITE, J., concurring in the judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." *United States v. Ross,* 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982). Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, *cf. Harlow v. Fitzgerald,* 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2737–2739, 73 L.Ed.2d 396 (1982), and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois,* 422 U.S. [590], at 610–611, 95 S.Ct. [2254] at 2265–2266 [45 L.Ed.2d 416] (POWELL, J., concurring in part); see *Illinois v. Gates, supra,* 462 U.S., at 264, 103 S.Ct., at 2344 (WHITE, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient, *i.e.,* in failing to particularize the place to be searched or the

things to be seized that the executing officers cannot reasonably presume it to be valid. *Cf. Massachusetts v. Sheppard,* —— U.S. [——], at ——, 104 S.Ct. [3424], at 3427 [82 L.Ed.2d 737]. [Footnotes omitted].

*Id.* at 3421–22.

The evidence before us reflects that the officer's affidavit which was put before the magistrate reflected fully and accurately all the information obtained. Whether the informants' information alone supported probable cause for the search warrant, or whether the officer's investigation, alone or in conjunction with the informants' information supported probable cause, were issues put squarely to the magistrate's decision. There is nothing in our record to indicate that the magistrate abandoned his judicial role in determining the existence of probable cause to issue his warrant. There is nothing in the record that would occasion a reasonably well-trained officer, in good faith, to believe that the magistrate's decision to issue the warrant was unsupported. I find no reason to apply here the exclusionary rule and suppress evidence of the guilt of Kann discovered by the officer in obedience to the order of the magistrate.

Kann argues that, upon reflection, the information of an unknown informant, relayed through an unconfirmed member of the Irving Police to a Richardson policeman, cannot be said to provide "probable cause" justifying the search warrant. For the sake of argument, I agree. Kann further argues that, upon reflection, the officer's trespass into someone's carport and peeking through someone's fence was an invasion of Kann's reasonable expectation of privacy, which claimed privacy was one that society would deem justified, and that the evidence thus secured should have been disregarded by the magistrate in determining whether to issue the search warrant. For the sake of argument, I agree. Nevertheless, absent allegation and proof, which is absent in this record, *Leon* does not permit this court, or counsel, to speculate on these arguments abstractly. *Leon* specifically holds that:

In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Leon,* 104 S.Ct. at 3423. Kann did not urge in her motion, or elicit evidence to support, any of the *Leon* exceptions to nonapplication of the exclusionary rule to evidence discovered by execution of a search warrant. *See Adams v. State,* 683 S.W.2d 525, 530 (Tex.App.—Dallas 1984, no writ).

I would hold that the trial court was justified by the holdings in *Leon* and *Adams* to determine that the deterrent effect of the exclusionary rule's application here was outweighed by the needs of the truth-finding functions of the judge and jury.