James Earl LIVINGSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 85 277 CR.

Court of Appeals of Texas, Beaumont.

June 10, 1987.

Bruce Neill Smith, Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty. and R.W. Fisher, Asst. Criminal Dist. Atty., Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Appellant was convicted of burglary of a building and a repeated offense and sentenced to twenty-five years confinement in the Texas Department of Corrections. His principal complaint on appeal is that evidence admitted at the trial was obtained in violation of state and federal search and seizure law. We are constrained to agree and must reverse his conviction and remand the case since we are unable to find this error harmless.

The circumstances of the search and seizure were adduced at trial from Mr. Braquet ("Braquet"), the complaining witness. Braquet owned the wrecking yard that was burglarized. He privately investigated the crime and focused his suspicion on appellant. He then contacted the police to get them to approach appellant for questioning. He was met in front of appellant's mobile home by sheriff's deputy Simmons ("Simmons"). Simmons remained at his car in a back-up position. Braquet recognized a tire and wheel in the yard as having been taken in the burglary. Upon knocking on the door and not getting an answer, he started to leave but noticed a tailgate leaning against an open wooden shed that was attached to the end of the mobile home. He approached the shed and by looking through the opening, discovered some more property. Simmons watched Braquet's activities and then directed him to stop until a Detective Hale ("Hale") arrived.

The following testimony reveals what occurred upon his arrival:

Mr. Braquet: When he got there, we — from that point, we went into the little shed there, which was — contained all these items that we located, and he took pictures as they were. Then, he told me to move —

Mr. Smith: Now, when Detective Hale got out there, did you tell Detective Hale that you had seen some of –

Mr. Braquet: Yes.

Mr. Smith: — your items, taken from the burglary?

Mr. Braquet: Yes, sir.

Mr. Smith: And did you tell him that you saw some of your items, as far as you were concerned, leaning against the trailer, and, also, in that tool shed?

Mr. Braquet: Yes. I told him I had seen items that belonged to me in Mr. Livingston's shed. Yes, sir.

Mr. Smith: So, Detective Hale got out of his car and went on the property, and did what?

Mr. Braquet: Took pictures, as — of the things, as they were, in the shed, and as you can see me in the pictures, there's stuff that didn't belong to me. He took pictures of this area.

Mr. Smith: And that was soon after Detective Hale got there?

Mr. Braquet: Right.

Mr. Smith: And after Detective Hale took these pictures, then, what happened?

Mr. Braquet: Then, he asked me to remove my items from the building and put them in a pile outside the building, —

Mr. Smith: Okay.

Mr. Braquet: – so he could inventory them, which he did.

Mr. Smith: All right. And this is right there, right next to the trailer, that you all were doing this?

Mr. Braquet: Right. In the driveway. Correct.

After inventorying these items, Braquet located a stolen winch on a wrecker parked in the yard by looking through a hole in the tool box in the bed of that vehicle. Braquet admitted that "standing on the road, I'd probably never have been able to see it—that it was my wench (sic), but when I walked up close, I could tell it was a wench (sic) with a cable on it." He agreed that Hale looked inside in the same manner. After Hale confirmed this discovery Mr. Braquet "got all the stuff put up that belonged to (him)" and was told that "we would have to get a search warrant to get the rest of it." Hale then obtained a search warrant to seize the vehicle.

Upon executing that warrant, Braquet and Hale discovered evidence in the mobile home which was used to secure a second warrant to search the trailer. Hale's affidavit in support of the second warrant fully describes the circumstances of this discovery:

Today, April 23rd, 1985, at 4:00 PM, the complainant, Gene Braquet, advised me that by looking thru the middle bedroom window on the west side of the trailer, one could see some of stolen property ... By placing a cinder block to be able to look over the window sill, I could also see, the described items, Mr. Braquet stated were his ... It is necessary to stand on the cinder block, to be able to look over the window sill, which is about six feet off the ground.

After entering the mobile home, pictures were taken of the stolen property located inside. These photographs, along with those of the other property recovered on the premises, were admitted over appellant's renewed objections to the pictures and testimony concerning the discovery of the photographed items that he previously made in a written motion to suppress. The court denied that motion without the benefit of a separate hearing prior to the beginning of trial.

The state alleges appellant waived the argument he now makes on appeal because the written motion varies from his position on appeal and because he was "content to ride on [the written motion's] allegations". *See Rovinsky v. State*, 605 S.W.2d 578 (Tex.Crim.App.1980); *Nelson v. State*, 607 S.W.2d 554 (Tex.Crim.App.1980). The variance lies in the fact that the written motion objected to Hale's activities while the appellant's brief complains of Braquet's activities. We disagree that this difference disposes of appellant's argument.

■ The written motion clearly informed the state that appellant complained of an illegal search and seizure based upon abrogations of the *U.S. CONST. amend. IV,*

*TEX. CONST. art. I, sec. 9,* and *TEX. CODE CRIM.PROC.ANN. art. 18.01* (Vernon Supp.1987) & *art. 38.23* (Vernon 1975). In order for his motion to suppress to be particular enough to adequately apprise the trial court of the objection, appellant had only to forward his legal theory in the motion, not specify the individual who conducted the search. *See* 4 W. LaFave *Search and Seizure* sec. 11.2(a), at 214–15 (2nd Ed.1987). This difference is, moreover, inconsequential to our analysis since we base this opinion on the impropriety of Hale's activities; the motion clearly complained of them and the point before us is that the motion was erroneously overruled.

■ In general, Texas assigns the burden of proof on a motion to suppress to the defendant attacking a warrant that is valid on its face, but to the state when a warrantless search is alleged to have occurred or a warrant is invalid on its face. *Rumsey v. State,* 675 S.W.2d 517 (Tex.Crim. App.1984); *Gonzalez v. State,* 588 S.W.2d 355 (Tex.Crim.App.1979). *See United States v. Berick,* 710 F.2d 1035 (5th Cir. 1983); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). Appellant's motion to suppress alleged that Hale entered his premises without a warrant and without his permission in illegally seizing evidence used to procure a warrant. He attached the two search warrants and supporting affidavits used to gather evidence from his premises to the motion and complained that the affidavit supporting the first warrant showed on its face that a warrantless search occurred. The state had the burden, therefore, of justifying that search and seizure.

Appellant requested a hearing on his pretrial motion to suppress. The trial court's denial of that request and delay of its decison on the motion until hearing live testimony at the trial was merited by *TEX. CODE CRIM.PROC. ANN. art. 28.01* (Vernon Supp.1987), since appellant's motion was filed only four days before the trial commenced. *See Bosley v. State,* 414 S.W.2d 468 (Tex.Crim.App.1967). This did not, however, affect the state's burden at trial since appellant re-urged his objections in the motion to suppress at the outset of Braquet's testimony. Despite this, the state failed to present any justification for the warrantless search. *See Gonzalez, supra.*

■ The state's position on appeal is, rather, that "confirmation of the presence of articles in the trailer, shed and truck by Mr. Hale was not a search—they had already been discovered." This is untenable. It overlooks Hale's searching the shed, photographing the items found there, and directing Braquet to assist him in seizing and inventorying the stolen property from the shed. The shed was protected from a search by the officer because it was immediately adjacent to the mobile home where appellant had a valid expectation of privacy. *Kann v. State,* 694 S.W.2d 156 (Tex. App.—Dallas 1985, pet. ref'd); *Gonzalez, supra,* at 360. The truck was also protected from a search since it was parked in the curtilage and Hale's looking into it ensued from an warrantless entry into the yard. *See Kann, supra; Gonzalez, supra.* Moreover, Braquet's involvement in the discoveries did not serve the evidence to the state on a silver platter.

■ The question to be addressed in deciding whether a private search and seizure has occurred is whether the private activities are "completely accomplished" before the inception of state involvement. In that regard, it is "immaterial" whether Hale "originated the idea or joined in it while the search was in progress." *Lustig v. United States,* 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819, 1823 (1949). Here, Hale ordered Braquet to assist him in gathering and inventorying the evidence. He photographed items while they remained in the shed. He photographed items while they remained in the shed. He entered the premises and participated in the search and seizure before either was "completely accomplished." *Lustig, supra; see also Stapleton v. Superior Court of Los Angeles County,* 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967 (1968). His actions alone constituted an illegal search and seizure.

■ In short, the guise of confirmation does not justify Hale's search or seizure of

any evidence other than the tire, wheel, and tailgate. No search for those items occurred because they were in plain view; Hale was authorized to seize them without a warrant because they were inadvertently discovered in the process of an attempt to question a suspect and because Braquet immediately identified them as evidence of the burglary. *Coolidge v. New Hampshire*, 403 U.S. 443, 466–67, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971).

■ The warrant used to seize the truck was, on the other hand, invalid. The search used to establish probable cause for that warrant was illegal because Hale was looking for evidence in a place that required a warrant. Since that search was illegal under the *U.S. CONST. amend. IV* and *TEX. CONST. art. I, sec. 9* the effect was to invalidate both warrants used to secure evidence in the case. *See Gonzalez, supra.* We additionally note that the second warrant was invalid since Hale admitted to searching appellant's home without a warrant or justification in a situation in which that intrusion unreasonably exceeded the scope of the first warrant. *See Long v. State*, 532 S.W.2d 591 (Tex.Crim. App.1976). The photographs of all evidence other than the plain view items should have been excluded; all testimony other than that concerning what occurred prior to Hale's search of the shed should have also been excluded.

The state argues that under the harmless error rule, exclusion of the photographs should not undermine the conviction because Mr. Braquet's testimony was admitted without the objection that it "would be a fruit of the alleged illegal search although an earlier objection had been made to the testimony of Mr. Braquet as to what he had seen when he looked around." In fact, appellant did object to Braquet's testimony shortly after he recounted having seen the wheel and tire in plain view and then knocked on the door. That objection raised all of the grounds in the motion to suppress, including its prayer that:

[T]he property seized and taken from said premises be suppressed and excluded from evidence in this cause be ordered [sic] to refrain from offering in evidence or producing in the presence of the jury on the trial of this case said property or any part of item thereof and from asking any question of any witness as to the presence of said property or any item or part thereof in or on said premises at said time and place.

■ Braquet's identification of his property was a fruit of the prior illegal search by Hale to the extent that it described what had been unlawfully seized. *See People v. Dowdy*, 50 Cal.App.3d 180, 123 Cal.Rptr. 155 (1975). Moreover, we find a reasonable possibility that the offending photos and testimony might have contributed to appellant's conviction. *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Crim.App.1981). This is especially the case since appellant, through other witnesses' testimony, alleged that his two accomplices perpetrated the crime when he had unwittingly allowed them to use his truck without knowing of their intent to burglarize Braquet's wrecking yard. That story would have been much more believable in the absence of evidence in appellant's mobile home and shed. We are constrained to reverse and remand this case and, therefore, find it unnecessary to address appellant's remaining points of error.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed. I do not agree with the majority in their holding that the private search, conducted by Braquet, the rightful owner of the stolen articles, was abrogated by the later appearance of the police at the property of the Appellant. I maintain the purpose of the Fourth Amendment of the United States Constitution and Article 1, section 9, of the Texas Constitution was to protect the private citizen's rights and privileges against *unlawful, unreasonable, governmental intrusions and not reasonable inquiries and searches conducted by private citizens. Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

The law is clear that a private search need not be completely free from any kind

of police involvement and still constitute a constitutional search. The Fourth Amendment cases refer to this situation as the "gray area". Modern authorities have decided privately initiated searches that fall in the "gray area" must be resolved on a case-by-case basis. *U.S. v. Walther,* 652 F.2d 788 (9th Cir.1981).

In order for a private citizen to become an instrument or agent of government, I believe that two factors must exist; that is, (1) that the government knew of, and acquiesced in, the intrusive conduct and (2) whether the party performing the search intended to assist the officer or to further his own ends. *U.S. v. Miller,* 688 F.2d 652 (9th Cir.1982). Here, the owner, Braquet, was attempting to locate and possess his own property.

If the state's involvement in the private search constitutes only an acquiescence, the private search is not transformed into a state search. The state must be the party to instigate, encourage or participate in the search in order for the Fourth Amendment to be applicable. *U.S. v. Coleman,* 628 F.2d 961 (6th Cir.1980).

Neither presence at the scene by police (even if the police asked a victim to identify some articles), nor the police authorizing a particular type of search by the private individual will cause the application of the Fourth Amendment. *U.S. v. Walther, supra; U.S. v. Miller, supra; U.S. v. Coleman, supra.* The Fourth Amendment prohibits governmental action and *not private citizen action.*

The test in determining whether a private citizen acted as an agent or instrument of the state is to look at the facts in light of the circumstances of the case. In the case at bar, the theft victim, Gene Patrick Braquet, was the instigator of the search. Gene Braquet was the one who phoned the police and asked them to back him up. Braquet knocked on the Appellant's door. No one answered. Braquet was the one who spotted his tires, wheel and other articles situated in plain view. These articles were the property of Braquet without any doubt. Braquet located other items that belonged to him. Braquet

and another person, a private individual, took other items out of a shed. Braquet used a cinder block to look inside an open window. No curtains obstructed his view. All the facts show that Gene Braquet, a private citizen, was the instigator or initiator of the search. Clearly, no criminal trespass occurred.

Matters and things that are open to view and open and obvious are not covered by the Fourth Amendment. See *Oliver v. U.S.,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Hester v. U.S.,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). If an accused person leaves his window uncurtained, he may not complain if another private citizen comes upon his property and observes goods stolen from him, the lawful owner. *Heath v. State,* 161 Tex.Cr.R. 323, 276 S.W.2d 534 (1955). It was reasonable, logical and necessary for the private, lawful owner to look into the house to see if his other valuable items were there, since all of his property was not, at first, detected outside. This action was still private action. *See U.S. v. Dunn,* 480 U.S. ——, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Katz v. U.S., supra.*

The record clearly demonstrates that the search originated by Braquet and through his independent motivation the search was conducted. Any presence of the police was due to Braquet's requests and demands. Mere presence of the officer is not enough to make the investigation and search impermissible under the Fourth Amendment.

The presence of Officer Hale on the Appellant's property was reasonable under the circumstances. The taking of photographs and standing on the cinder block were also reasonable under this record. Under *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the conduct by Officer Hale, on the property, was only one factor to be considered under the "totality of the circumstances" standard for evaluating the validity of a search warrant. I quote from *Illinois v. Gates, supra:*

"This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a 'practical, nontechnical conception.' *Brinegar v. United States*, 338 US 160, 176, 93 L Ed 1879, 69 S Ct 1302 (1949). 'In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Id.*, at 175, 93 L Ed 1879, 69 S Ct 1302 [at 1310]. Our observation in *United States v. Cortez*, 449 US 411, 418, 66 L Ed 2d 621, 101 S Ct 690 (1981), regarding 'particularized suspicion,' is also applicable to the probable-cause standard:

'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and

so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' "

Officer Hale contemplated that a subsequent search warrant would be issued in the early morning hours. He wanted to make sure that the informant's information given to him was reliable and, indeed, correct and accurate. It was only reasonable for him to view the stolen items since he was present and Braquet requested same. Hale only could make sure the informant's veracity, reliability and basis of knowledge were credible and sufficient by viewing the items. Any defect in the affidavit was cured by the warrant being issued by a neutral and independent magistrate. Once an independent judicial officer decides that there was probable cause for a warrant, then technical defects, if any, become cured. The proper checks and balances, reviewing the officer's action, take place. *Johnson v. U.S.*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). We quote from *Johnson, supra* [333 U.S. at 13–14, 68 S.Ct. at 369, 92 L.Ed. at 440]:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

. . . .

"Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. ...."

It was in *Hester v. U.S.*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, that the U.S. Supreme Court held that testimony of two police officers, who trespassed upon the accused's land, would not be inadmissible as having been obtained in violation of the Fourth Amendment because there was a search in an open area. Also, Texas Court of Criminal Appeals, in *Crowell v. State*, 147 Tex.Cr.R. 299, 180 S.W.2d 343 (1944), has held that, if the facts are sufficient to prove a civil wrong and not a criminal violation, then any evidence obtained, or testimony given, by an officer or other person, even though the officer or other person is a trespasser, would not be inadmissible. *See TEX.R.CRIM.PROC. art. 38.23* (Vernon 1979). *Article 38.23* is not applicable to the case at bar. *See Maryland v. Garrison*, 480 U.S. ——, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). In *Maryland v. Garrison, supra*, we find [at 94 L.Ed.2d 75]:

"The United States Supreme Court has jurisdiction to review a state court decision where the opinion of the state court (1) relies on a state constitutional provision and state cases as well as the Feder-

al Constitution's Fourth Amendment and federal cases, (2) does not contain any plain statement that the decision rests upon adequate and independent state grounds, and (3) indicates that the state constitutional provision is construed in pari materia with the federal constitutional provision."

The objection made by the Appellant's counsel on the introduction of the photographs of the stolen items was insufficient. The Appellant's counsel objected to all of the photographs as a group. A number were clearly admissible. Hence, error was waived. Many of the photos were of purloined, valuable articles seen and observed by the lawful owner—a private citizen—in plain view from off the Appellant's premises.

In summary, the owner of the stolen property was Gene P. Braquet. He had a wrecker service. A burglary took place there. Entrance to his business was accomplished by large bolt or chain cutters. The entry was forced.

The owner had a suspect named Robbie Wilcox. Wilcox had a particular type, or style, of gloves that were very similar in type and style to a pair of gloves found at the scene of the burglary. Wilcox told Braquet that the Appellant gave him the pair of gloves. An exhibit of the gloves came into evidence without objection.

Braquet went to the residence of the Appellant. The location of the residence was given by Wilcox. Braquet, as a private citizen, was endeavoring to find out who was responsible for the burglary. Many valuable articles were taken from Braquet's place of business. Two of his trucks were stolen. The stolen trucks were later located near China, near the L.N.V.A. Canal. The same type of gloves was found in one of the stolen trucks.

Braquet had received information that the Appellant "was pretty violent". When Braquet arrived at the Appellant's place, he recognized his own wheel and tire in open view. The owner, Braquet, knocked at the door of the house trailer but no one responded. The private citizen saw other items of his property, such as his tailgate, in plain view. Braquet could look into a little shed that was amply open and could visibly see his "control head" that was out of his own "wrecker". The control head was definitely identifiable by a coded number known to Braquet. Both of these items were in plain view and were on the outside of the trailer of Appellant. Photographs were taken of these items. The photographs were taken after a search warrant was obtained. In fact, two search warrants were obtained. The second warrant was to get access to the trailer.

Braquet could see through the window of the trailer. In the trailer were other items or articles stolen from Braquet. These items were radio equipment, a stereo and a television. Braquet said that this type of equipment had to be protected from the weather.

The following is a fair statement or summary, showing that this episode was one conducted by a private citizen. Braquet was asked:

"Q. [D]id the law enforcement officers direct your activities in walking around that property, at all?

"A. No, sir."

It was reasonable for Braquet to ask for some officer's assistance as a back up because this record shows that the Appellant had been previously finally convicted of theft, unauthorized use of a motor vehicle and burglary of a building. The jury found that all of the additional allegations and enhancement paragraphs in the indictment were true.

For the reasons above stated, I respectfully dissent.