**Roberto DELOSREYES, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–91–00403–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 8, 1993.
Rehearing Denied June 3, 1993.

Alan S. Percely, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Vic Wisner, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,[1] JJ.

---

1. The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

MIRABAL, Justice.

A jury found appellant, Roberto Delosreyes, Jr., guilty of possession of marihuana in a usable quantity of more than 200 pounds and less than 2000 pounds. The jury assessed punishment at 75–years confinement and a fine of $100,000. We affirm.

In his first and second points of error, appellant asserts the trial court erred in overruling his motion to suppress evidence.

■ Appellant filed a pretrial motion to suppress evidence, and an evidentiary hearing was held. The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *Perez v. State*, 818 S.W.2d 512 (Tex.App.—Houston [1st Dist.] 1991, no pet.). On appellate review, the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 702 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). With these standards in mind, we review the evidence introduced at the suppression hearing.

In the afternoon of February 22, 1990, W.R. King, an officer with the Pasadena Police Department's narcotics investigation division, received a phone call from a reliable informant. The informant said he "observed several persons unloading blocks, plastic wrapped blocks from a van, carrying [them] into the residence, 309 West Calvin." The informant did not speculate on the content of the blocks. Neither did the informant provide any names, and Officer King did not know the names of the persons at the address until they were arrested later that evening.

Officer King and Officer Smith drove by the address in an unmarked car and corroborated the tip. They could see one person in the back of a van, and another person carrying a one-foot-cube, plastic-wrapped block into the residence. At the hearing, Officer King identified appellant as the person who was carrying the block. The officers could not tell, from driving by, what was in the block, but Officer King had seen marihuana packed in blocks like that on several occasions before. They noted a second van in the driveway. After driving by several times, the officers found a place where they could keep constant surveillance on the house, and called in a surveillance team.

Later, appellant left the residence driving one of the vans and a person, later identified as Duenas, left with him driving the other van. The officers followed the vans to a motel about two miles away where appellant and Duenas checked into a room. Later, appellant left the motel and drove to a residence at 1102 Vince. The officers followed him. No one maintained surveillance on Duenas.

Over a period of time, the officers observed several vehicles pull up at the Vince residence at different times. Each time, the persons in the vehicle would get out, meet appellant at the front door, and appellant would either drive them, or they would follow him, over to the residence at 309 West Calvin. At West Calvin they entered the residence, stayed a few minutes, and then left. Appellant would then return to the Vince residence. The officers followed appellant back and forth about three times.

When it became dark outside, Officer King parked his vehicle on another street, got out, and walked up to the West Calvin residence. Officer King walked up to the garage area, "To see if I could detect any smell of any drugs." He sniffed by the edge of the garage door and smelled the odor of "unburned, fresh marihuana." He believed he then had probable cause to effect an arrest. After he smelled marihuana, Officer King returned to his car and re-established surveillance.

A few minutes later, appellant came out of the house. With the officers following him, appellant drove back to the motel where he entered the rented room. About five minutes later, appellant and Duenas left the motel driving separate vans. The officers followed them into Houston, and

eventually headed south on the Southwest Freeway. As they approached the 4400 block of the Southwest Freeway, the officers became concerned the vans would leave the county. They called the Houston Police Department (HPD) for assistance, and a marked HPD vehicle stopped the two vans. Officers King and Smith immediately pulled up in their unmarked vehicle and arrested appellant and Duenas. The men were handcuffed and driven by the HPD to the Pasadena station where they were turned over to Officer King's custody. Appellant was put in a holdover cell. Officer King told appellant that he was preparing to obtain a search warrant for the residence on West Calvin.

Officer Smith testified he spoke to appellant. Appellant was in custody at the time, appeared to be sober, was able to read and speak the English language, and he had not been threatened or harmed by anybody. Officer Smith further testified:

A: First what I did, I read him a Miranda warning and advised him why he had been stopped. At that point, he basically told me, I know, he knew what we were looking for. He just didn't want his parents to be in trouble. I explained to him that we were going to be in the process of trying to obtain a search warrant. He advised me that he would sign a consent to search or let us look in the house as long as we didn't take his parents to jail.

. . . .

A: At that point, I gave Mr. Delosreyes a consent to search form, let him read it and I read it to him. At that point he signed it, I signed it, another officer signed it.

Q: What location was that for?

A: For the address on Calvin Street.

Officer Smith testified that the consent to search was a free and voluntary act, that appellant understood a search warrant was being prepared; and "[i]f he wanted to sign the consent, he could." Later that evening, appellant also signed a consent to search the house on Vince Street. The consents to search the West Calvin and Vince residences were introduced into evidence.

Officer King testified he later entered the West Calvin residence by using appellant's key, and he found approximately 71 square bricks of compact marihuana.

At the close of evidence, the trial court took the motion to suppress under advisement. The trial court subsequently overruled the motion, and filed findings of fact and conclusions of law that include the following:

### FINDINGS OF FACT

3. During the period of time the Defendant was away from the W. Calvin residence, Officer King approached the W. Calvin residence and walked up the driveway towards the garage. This residence had no fences, gates, signs or other notice to the public that the path leading to the residence used by officer King was not open to the public. As King approached the garage he detected a very strong odor of what King believed, based on prior experience, to be marihuana.

4. At approximately 7:00 P.M. on the aforementioned date, the Defendant and Duenas exited the Gateway Motel, entered separate vans and drove out of the City of Pasadena, eventually heading south on the Southwest Freeway. Officers had no knowledge of the Defendant's possible destination or when the Defendant would return to the W. Calvin residence. Further officers did not know the Defendant's identity prior to his arrest. At King and Smith's request, City of Houston Police Officers stopped the vans driven by the Defendant and Duenas in the 4000 block of the Southwest Freeway, in Houston, Harris County, Texas. The van driven by Duenas, from which the Defendant had previously been handed the bundle of marihuana, exhibited a very strong odor of marihuana.

. . . .

5. The Defendant was then transported to the Pasadena Jail. At the jail the Defendant volunteered to Officer Smith that the marihuana belonged to the Defendant and that the Defendant's parents

were not involved in possessing the marihuana located at the Defendant's parents' residence on W. Calvin. The Defendant then signed consents to search the aforementioned residences on W. Calvin and Vince.

. . . .

## CONCLUSIONS OF LAW

The Defendant did not establish standing to challenge the search of either residence in that the Defendant brought forward no evidence to establish a reasonable expectation of privacy at either location. Assuming, arguendo, that the Defendant established standing to challenge the aforementioned searches, neither search violated the laws of the State of Texas nor the United States or Texas Constitutions in that the searches were conducted at the Defendant's voluntary consent obtained after the Defendant was lawfully arrested.

At the time the Defendant was placed under arrest, the totality of the circumstances known to Officers King and Smith gave these officers sufficient probable cause to believe that the Defendant had committed an offense under the laws of the State of Texas and further that the Defendant was about to escape.

The Defendant, as set forth above, did not establish standing to challenge the actions of Officer King in approaching the residence on W. Calvin to attempt to detect the odor of marihuana. Again, assuming arguendo, that the Defendant had an expectation of privacy at that residence, the actions of Officer King were not violative of the Defendant's Fourth Amendment rights nor of his protections under the Texas Constitution or the laws of the State of Texas in that Officer King invaded no privacy interests of any resident of the residence on W. Calvin.

. . . .

This Court finds by clear and convincing evidence that consents to search the residences on W. Calvin and Vince streets were executed by the Defendant freely, knowingly and voluntarily after the Defendant initiated conversations with Officer Smith in which the Defendant admitted his involvement in the present offense.

In point of error one, appellant asserts the trial court erred in overruling his motion to suppress when appellant was arrested without a warrant, without probable cause, and without the existence of exigent circumstances.

■ A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, and (2) the arrest falls within one of the exceptions specified in TEX. CODE CRIM. P.ANN. art. 14.01–14.04 (Vernon 1977). *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim.App.1987). Article 14.04 reads:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX. CODE CRIM.P.ANN. art. 14.04 (Vernon 1977).

■ Viewing the totality of the circumstances, the evidence supports the trial court's finding that appellant "was about to escape," so that there was no time to procure a warrant. The main contested issue in this case is whether the evidence supports the trial court's finding that the officers had probable cause to effect an arrest. The State argues the officers had probable cause when Officer King detected the odor of marihuana in the garage. Appellant's response is that Officer King's "sniff" was illegal because he committed a trespass on appellant's property.

Under article 38.23(a) [2] of the Texas Code of Criminal Procedure, illegal evidence may

---

**2.** Article 38.23(a) of the Texas Code of Criminal Procedure provides in pertinent part:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or

not be relied on for probable cause. *See Knox v. State*, 586 S.W.2d 504, 506 (Tex. Crim.App. [Panel Op.] 1979). It is uncontested that the officers did not have probable cause until the sniff revealed the presence of marihuana in the garage; therefore, the officers were not authorized to execute a warrantless arrest under the code unless the sniff was legal.

Officer King testified that, when he walked up to the garage, he walked only on the driveway. There was no fence or any other obstruction around the residence that the officer had to cross in order to walk along the driveway. There were no signs prohibiting anyone from walking on the driveway. The driveway also led to the front door of the house. There was no separate sidewalk leading from the street to the front door. The garage was not set back to the rear of the house; rather, the front of the garage was even with the front of the house. A open-air, single-vehicle carport extended from the front of the garage over the driveway for a short distance. The trial court specifically found that the residence "had no fences, gates, signs or other notice to the public that the path leading to the residence used by Officer King was not open to the public."

■ A person commits the offense of criminal trespass if he enters property of another without effective consent, and he has notice that the entry is forbidden. TEX. PENAL CODE ANN. § 30.05 (Vernon 1989). In the present case, the evidence supports the trial court's finding that Officer King had no notice that entry on the property was forbidden.

■ Appellant contends that, even if there was no criminal trespass, the officer did commit a trespass "at common law." However, a "common law" or "civil" trespass does not amount to a "violation of the law" for purposes of TEX. CODE CRIM.P.ANN. art. 38.23(a) (Vernon Supp.1993), and its predecessor statutes. *See Crowell v. State*, 147 Tex.Crim. 299, 180 S.W.2d 343,

347 (1944); *see also Meador v. State*, 151 Tex.Crim. 53, 204 S.W.2d 628, 631 (1947); *Crawford v. State*, 769 S.W.2d 331, 332 (Tex.App.—San Antonio 1989, pet. ref'd); *Kann v. State*, 694 S.W.2d 156, 159 (Tex. App.—Dallas 1985, pet. ref'd).

■ Appellant relies heavily on *Kann*. There, the carport was located behind the defendant's townhouse. The police officer had to drive down the alley behind the townhouse to the carport. The rear of the carport adjoined a six foot wooden fence, with a closed gate; the fence blocked the officer's line of vision, so she could not see into the backyard of the townhouse. The officer walked the length of the carport to the fence, bent down and peered through a hole into the back yard, where she saw marihuana plants growing in pots. The court in *Kann* held the officer's actions constituted on illegal search without a warrant. 694 S.W.2d at 160.

Appellant argues that, even though in the present case there was no fence for Officer King to peer through, there was a closed garage door under which he "sniffed" to detect the odor of marihuana. Appellant takes the position that he had a legitimate, reasonable expectation of privacy with regard to the garage, its contents, and the smells emanating from it.

We find *Kann* distinguishable because the officer's actions in *Kann* were much more intrusive than the officer's actions in the case before this court. Accepting that the carport and the garage in the present case were in the curtilage of appellant's home, the question remains whether the police conduct here violated an expectation of privacy that is reasonable. *See California v. Ciraola*, 476 U.S. 207, 213, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986). In *Kann*, the officer approached through an alley behind the house; there was a large, wooden privacy fence adjoining the carport and enclosing the back yard. Clearly, the resident of the townhouse did not expect visitors to traverse the property from the

of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX.CODE CRIM.P.ANN. art. 38.23(a) (Vernon Supp. 1993).

rear. The fence was obviously designed to exclude intruders. In the case before this court, Officer King merely walked from the street in front of the house, a short way up the driveway to the garage door, and smelled the marihuana emanating from the garage. The driveway is situated so that *anyone* approaching the house would walk up the driveway and pass near the garage in order to get to the front door of the house.

■ We hold the trial court did not err in concluding that Officer King by his actions, "invaded no privacy interests of any resident of the residence on W. Calvin." We conclude the evidence supports the trial court's finding that the officers had probable cause to effect an arrest.

We overrule appellant's point of error one.

In point of error two, appellant asserts his consent to search was not voluntarily given. He argues his consent was induced because he was told the arrest was for "investigation of possession of marihuana" and that a search warrant was being prepared for the Calvin Street residence.

■ It is well settled that when the State relies on a consent to search, the burden of proof is on the prosecution to show by clear and convincing evidence that the consent was freely and voluntarily given. *Paulus v. State*, 633 S.W.2d 827, 850 (Tex.Crim.App.1981). The prosecution must show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Id.* The burden is not discharged if the prosecution does not show more than an acquiescence to a claim of lawful authority. *Id.* Whether the consent relied upon is a valid one is determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *Paulus*, 633 S.W.2d at 850.

■ In the present case, the State presented uncontradicted evidence that appellant volunteered his consent to keep his parents out of jail. Officer Smith testified as follows:

Q: Please explain to Judge Bacon how you went about speaking with the defendant in the attempt to obtain the consent to search?

A: First what I did, I read him a Miranda warning and just advised him why he had been stopped. At that point he basically told me, I know, he knew what we were looking for. He just didn't want his parents to be in trouble. I explained to him that we were going to be in the process of trying to obtain a search warrant. He advised me that he would sign a consent to search or let us look in the house as long as we didn't take his parents to jail.

Q: Now, when he was speaking about taking his parents to jail, which location was he referring to?

A: On Calvin Street.

Q: And also you mentioned to Judge Bacon that you told the defendant that you were in the process of preparing a search warrant. Was that in fact true?

A: Yes, it was.

Q: Did the defendant seem to understand his rights and did he appear able to understand you and understand the situation that he was in?

A: Very clearly, yes, sir.

Q: I'm sorry, sir. Please go ahead and explain to us how you obtained the consent to search.

A: At that point, I gave Mr. Delosreyes a consent to search form, let him read it and I read it to him. At that point he signed it, I signed it, another officer signed it.

Q: What location was that for?

A: For the address on Calvin Street.

Officer Smith further testified appellant was not subjected to any threats or force to sign the consent, and that it was a free and voluntary act on his part to sign the consent to search.

The evidence supports the trial judge's conclusion the consent was freely and voluntarily given. We overrule point of error two.

In point of error three, appellant asserts the trial court erred in denying his motion

for instructed verdict of acquittal. He argues there is no evidence to show he exercised care, custody, or control over any package other than the one package he was seen carrying.

A challenge to the trial court's ruling on a motion for instructed verdict is, in actuality, a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex. Crim.App.1990). In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex. Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim. App.1984).

The jury heard testimony that the officers saw appellant carrying a package of what appeared to be marihuana into the residence from a van. After the police had observed appellant for about seven hours, Officer King walked up to the residence where the officers had first seen appellant, and he detected a strong odor of marihuana emanating from the garage. When appellant and the other individual was stopped on the freeway, the officers noticed that a strong odor of marihuana was also emanating from the van from which appellant had been seen taking a package.

After appellant was taken into custody, appellant told the police that the marihuana located at the residence belonged to him. A search of the residence revealed 71 packages of marihuana, weighing over 915 pounds, in the garage. The packages of marihuana were similar to the package that the officers had seen appellant carrying earlier in the day.

We hold the evidence is sufficient to support the jury's finding that appellant exercised care, custody, and control over the marihuana seized in this case. We overrule appellant's third point of error.

We affirm the judgment.