**Washington Eduardo BLONDETT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–93–00139–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

April 18, 1996.

Rehearing Overruled April 25, 1996.

R. Scott Shearer, Houston, for appellant.

Lester Blizzard, Houston, for appellee.

Before YATES, FOWLER and DRAUGHN,* JJ.

## CORRECTED OPINION

JOE L. DRAUGHN, Justice (Assigned).

Appellant entered a plea of not guilty before a jury to the offense of murder. TEX.PENAL CODE ANN. § 19.02 (Vernon 1989).[1] The jury convicted him and assessed punishment at confinement for seventy years in the Institutional Division of the Texas

---

\* The Honorable Joe L. Draughn sitting by assignment.

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. See Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

Department of Criminal Justice. The jury also found that appellant used a deadly weapon. Appellant raises fourteen points of error. We affirm the judgment of the trial court.

Appellant's sister introduced him to Guido Osorio when they both lived in the same apartment complex in the Alief area of Houston. Osorio was having problems with a gang known as the "Mixed Mafia." Osorio, Jaime Fletcher, and Felipe Melendez had been asked to join the "Mixed Mafia," but Osorio refused to join because he wanted to form his own gang. Tino Moreno, a member of the "Mixed Mafia," then allegedly attacked Osorio in school and shot at Osorio's apartment.

On the evening of November 16, 1991, appellant left work from Toys R Us at 7:30 p.m. As he was walking home, Osorio, who was only 15 years old, drove up in his brother's car. Osorio told appellant, who was 21 years old, to drive the car so Osorio could take his sister-in-law to her house. After they dropped off the sister-in-law, Osorio told appellant they would go to a party where appellant could meet some people his age. Appellant and Osorio spent about thirty minutes driving around looking for the party. They eventually found a party at 11427 Glenwolde. Inside the house, the Vargas family was hosting a party to celebrate their daughter's thirteenth birthday. As appellant drove up to the house, Osorio fired four to six shots at the house. One of the bullets penetrated the wall and hit Jennifer Mroz, a twelve year-old girl, in the back. Mroz died from a gunshot wound to the heart.

Prior to meeting appellant that evening, Osorio had called Melendez and told him that Osorio and his "cousin" [2] were going to do a "drive-by." Osorio said that he wanted "to get Tino," a member of the "Mixed Mafia." Osorio invited Melendez to go along "to get Oscar," another "Mixed Mafia" member. Melendez refused to go. About an hour and a half after the first phone call, Osorio called Melendez from appellant's apartment. They then called Fletcher and had a three-way call with Fletcher in which an excited Osorio said, "We did the drive-by." During the call,

Fletcher became very upset with Osorio because the birthday party was not a "Mixed Mafia" party. Fletcher told Osorio that he had shot and killed a twelve year-old girl who was not part of the gang.

About two weeks after the crime, Osorio, Melendez and appellant met at a "Mr. Lube" on Highway 6. At this time, Osorio described the drive-by shooting in detail to Melendez. Appellant said that they should not talk about the "drive-by" in public because someone might overhear them.

Houston Police investigators, acting on rumors spreading around the Alief schools, developed appellant and Osorio as two suspects in the crime. The officers obtained arrest warrants for appellant and Osorio. They were arrested, and Osorio confessed. Osorio showed police investigators where he had disposed of the gun near appellant's apartment. Osorio then fled and remained a fugitive at the time of trial.

In his first point of error, appellant contends the trial court abused its discretion by denying appellant's motion to suppress evidence because the State failed to produce and exhibit a valid arrest warrant or to prove the reasonableness of the arrest. Appellant, however, failed to prove the arrest was warrantless. A movant in a motion to suppress alleging a lack of probable cause must initially produce evidence that a warrantless arrest occurred. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). By doing so, the burden shifts to the State to show that a warrant existed. *Id.* If the State produces evidence that a warrant existed, the burden then shifts back to the defendant to show the invalidity of the arrest or seizure. *Id.* If the State cannot prove that a warrant existed, it must prove the reasonableness of the arrest. *Id.* at 10. Appellant did not meet his initial burden of showing that his arrest was warrantless because he did not produce the arresting officers to testify that they arrested appellant without a warrant. *Highwarden v. State*, 846 S.W.2d 479, 480 (Tex.App.—Houston [14th Dist.] 1993), *pet. ref'd*, 871 S.W.2d 726 (Tex.Crim.App.1994). The only evidence that appellant presented was his own testi-

2. Although not related, Osorio referred to appel-    lant as his "cousin."

mony that he did not recall the officers presenting a warrant. This was not enough evidence to show that a warrantless arrest occurred. Appellant's testimony does not raise the inference that this was a warrantless arrest. He just did not recall the warrant being used. Appellant was required to present credible testimony that he was arrested without a warrant and he failed to present the officers' testimony or other credible testimony to that effect.

▮ Furthermore, the trial court did not err in denying the motion to suppress because there were no fruits of the arrest. The police did not obtain any evidence from the arrest other than appellant himself. The defendant cannot be considered a fruit of the arrest. *Pichon v. State*, 683 S.W.2d 422, 426 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2680, 86 L.Ed.2d 698 (1985); *Sanders v. State*, 834 S.W.2d 447 (Tex.App.—Corpus Christi 1992, no pet.). Appellant attempts to evade this fundamental principle by arguing that the officer's observations and testimony regarding appellant's post-arrest silence, and his post-arrest silence were fruits of the arrest. Appellant's post-arrest silence could not possibly be a fruit of the arrest because the jury could not use it as evidence of appellant's guilt. *Jamail v. State*, 787 S.W.2d 380, 382 (Tex.Crim.App. 1990). Appellant's trial counsel showed on cross-examination of the arresting officer that appellant had the right to remain silent and the jury could not make any inferences based on his post-arrest silence. Because no evidence was improperly obtained, the trial court did not err in overruling appellant's motion to suppress. We overrule appellant's first point of error.

▮ In his second point of error, appellant contends the trial court erred by admitting hearsay statements from the phone conversations between Osorio and Melendez. Appellant first contends the trial court erred in admitting Osorio's statement to Melendez prior to the shooting that he "and his cousin [appellant]" were planning to do a "drive-by" "to get Tino." These statements were admissible under the co-conspirator exception to the hearsay rule because appellant's so-conspirator, Osorio, was trying to encourage

Melendez to join the conspiracy. TEX. R.CRIM.EVID. 801(e)(2)(E); *Deeb v. State*, 815 S.W.2d 692, 696 (Tex.Crim.App.1991); *Bass v. State*, 830 S.W.2d 142, 147 (Tex.Crim. App.—Houston [14th Dist.] 1992, pet. ref'd). Osorio said that he wanted Melendez to join them "to get Oscar," another gang rival. The entire conversation concerned planning the "drive-by." The trial court properly admitted these statements as statements by appellant's co-conspirator.

▮ Appellant also contends the trial court erred in admitting the statements in the three-way phone conversation after the shooting between Osorio, Melendez and Fletcher. In this conversation, an excited Osorio said, "We did the drive-by." Because this statement was made a short time after the shooting, the trial court admitted it as an excited utterance. An excited utterance is a "statement relating to a startling event of condition made while the declarant was under the stress of the excitement caused by the event or condition." TEX.R.CRIM.EVID. 803(2). While the period of time that lapsed between the occurrence of the startling event and the making of the statement is a factor to consider in determining the admissibility of such statements, the critical factor is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event. *Ross v. State*, 879 S.W.2d 248, 249 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd.). The State elicited testimony from Melendez to show Osorio was still influenced by the excitement caused by the shooting when he made the statement about an hour after the shooting. The trial court properly determined that this statement was admissible as an excited utterance. Further, the admission of these statements was harmless to appellant's defense because the jury heard the same testimony from other sources. Jaime Fletcher testified about the same conversation without objection. Appellant also admitted his involvement in the "drive-by" two weeks after the shooting when he said they should not discuss it at the "Mr. Lube." Because the trial court did not err in admitting these statements, we overrule appellant's second point of error.

██ In his third point of error, appellant contends the trial court erred by failing to state in the record the reasons for his ruling on a Rule 403 balancing test. Rule 403 requires the trial court to determine if the evidence should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." TEX. R.CRIM.EVID. 403. A judge cannot refuse to conduct a Rule 403 balancing test. *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex. Crim.App.1991). However, there is no requirement that he state his reasoning in the record. The judge is free to conduct this balancing test in his head and then state a ruling. A trial judge implicitly makes findings of fact and conclusions of law when he determines the admissibility of evidence but is not mandated to *sua sponte* put these findings or conclusions on the record. *McFarland v. State,* 845 S.W.2d 824, 842 (Tex.Crim.App.1992). We overrule appellant's third point of error.

██ In his fourth point of error, appellant contends the trial court erred by admitting the confession of appellant's co-defendant, Osorio. A co-defendant's confession is inadmissible hearsay and its admission is generally harmful. *Hood v. State,* 828 S.W.2d 87 (Tex.App.—Austin 1992, no pet.). However, in this case, the confession was never actually admitted. The officer only discussed it in passing.[3] Because the trial court did not admit the confession, it did not err. Further, even if a mere reference to the confession, as opposed to the actual admission of the co-conspirator's confession, would be error, the trial court did not err by allowing the State to discuss it because appellant "opened the door" for its use. When a party introduces matters into evidence, he invites the other side to reply. *Kincaid v. State,* 534 S.W.2d 340, 342 (Tex.Crim.App.1976); *Bell v. State,* 867 S.W.2d 958, 962 (Tex.App.—Waco 1994, no pet.). Appellant's counsel asked the officer to discuss the evidence used as a basis

to arrest appellant. The officer then discussed hearsay statements made to Melendez, Fletcher, and another person named Maria Martinez. To clarify the false impression that the State had only the minimal evidence contained in these few hearsay statements upon which to arrest appellant, the prosecutor asked the officer if that was all the evidence he used to decide to arrest appellant. The officer then said he also considered Osorio's confession which implicated appellant as the driver of the car. By asking about the quantity of evidence supporting the arrest, appellant's counsel made the co-conspirator's confession relevant because it was directly on point with the question concerning the evidence relied upon by the police. The State only mentioned the co-conspirator's confession to rebut a misrepresentation created by appellant's trial counsel. For these reasons, the trial court did not err by permitting the officer to discuss Osorio's confession. We overrule appellant's fourth point of error.

██ In his fifth through seventh points of error, appellant contends the trial court erred by allowing impermissible jury argument. In his fifth point of error, appellant contends that the prosecutor's jury argument was so egregious that the trial court's instruction to disregard did not cure the error. The prosecutor argued that appellant could be found guilty as a party if he simply failed to contact the police. This was clearly a misstatement of the law. The trial court, however, instructed the jury that what the attorneys said was not the law and that the judge would instruct them on the law of the case. Appellant argues that the instruction to disregard was not enough to cure and that the trial court should have declared a mistrial. Except in extreme cases, the jury is presumed to follow instructions including instructions to disregard. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App.1987). This was not an extreme case and the trial court told the jury that what the attorneys said was not the law. Because the trial court told the jury to disregard the statement and only

---

3. See points of error twelve—fourteen for a more detailed discussion of the trial court's failure to admit the confession.

listen to the judge's instructions on the law, the trial court cured any error caused by the improper argument. The prosecutor's argument was not so harmful as to require a mistrial. We overrule appellant's fifth point of error.

In his sixth and seventh points of error, appellant contends the trial court erred by permitting the prosecutor to argue that appellant listened to the witnesses at trial and then fabricated his testimony to fit the testimony of the earlier witnesses. Appellant contends this argument infringes on appellant's right to confront witnesses, be present during trial, and testify on his own behalf. The prosecutor, however, could rebut appellant's claims that he testified truthfully and is permitted to answer the argument of opposing counsel. *Sterling v. State,* 830 S.W.2d 114, 120 (Tex.Crim.App.1992). The trial court properly allowed this argument as rebuttal to the appellant's argument that he testified truthfully. We overrule appellant's sixth and seventh points of error.

In his eighth point of error, appellant challenges the sufficiency of the evidence supporting his conviction. Appellant admits that he was driving the car, but claims he did not know his passenger opened fire on the house as they drove past at a slow speed. When reviewing the sufficiency of the evidence, we determine whether, in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hilton v. State,* 879 S.W.2d 74, 79 (Tex.App.—Houston [14th Dist.] 1994, no pet.). Appellant claims that he thought Osorio was shooting firecrackers in the backseat of the car. The jury was the exclusive trier of facts, credibility of the witnesses and weight to be afforded their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim. App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury was free not to believe appellant's story and believe that he knew that Osorio was shooting at the house. Further, the State presented additional evidence of appellant's knowing involvement in the drive-by by introducing the conversation at the Mr. Lube in which appellant said they should not discuss the "drive-by" in public. This evidence was clearly sufficient evidence to show appellant was a party to the murder of Jennifer Mroz. We overrule appellant's eighth point of error.

In his ninth point of error, appellant contends he received ineffective assistance of counsel. To show ineffective assistance of counsel, an appellant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986). When it is easier for a court to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, the court should follow that course. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. In this case, none of the incidents presented by appellant prejudiced his defense. To show prejudice, appellant must show a reasonable probability that but for counsel's alleged unprofessional performance, the result of the proceeding would have been different.

Appellant first claims that his trial counsel was ineffective because his questioning of the police officer led to the admission of his co-defendant's confession. First, the co-defendant's confession was not admitted and was only discussed as evidence to support the warrant. One of appellant's main themes at trial was that the police did not have sufficient probable cause to issue a warrant. Without this question, appellant's counsel could not have developed this theme. Further, the discussion of the co-defendant's confession was harmless because it was not introduced as evidence of appellant's guilt and was used only to show probable cause. Additionally, the jury never actually saw the co-defendant's confession because it was not admitted as an exhibit. Finally, any information contained in the confession was readily available from a number of other sources. For all the above reasons, appellant has failed to show any harm caused by his trial counsel's handling of his co-defendant's confession.

■ Appellant next claims his counsel was ineffective because he allowed the officer to discuss appellant's "post-arrest" silence. Appellant's counsel was not ineffective in handling this issue because he showed in cross-examination that appellant had the right to remain silent and that the jury could not infer anything from appellant's post-arrest silence.

Appellant next alleges his counsel was ineffective because he failed to object to improper jury argument. As discussed above, the jury argument was proper. Therefore, his counsel was not ineffective for failing to object to proper jury argument.

■ Finally, appellant contends his trial counsel was ineffective because he failed to obtain certain special instructions or issues. He specifically claims that his trial counsel failed to obtain an instruction on voluntary manslaughter, failed to limit the charge to appropriate mental states, failed to request a negligent homicide instruction, and failed to procure special issues on "parties" and "reasonable doubt." While each of these instructions would have directed the jury to specific issues upon which appellant wished to focus his defense, counsel's failure to request them was not an error that creates a reasonable probability that, but for the error, the result of the proceeding would have been different. There is no reasonable probability, given the clear and direct evidence linking appellant to the crime and the nature of the offense, that the jury would have reached a different result even if these instructions were given. See, e.g., Shaw v. State, 874 S.W.2d 115, 120 (Tex.App.—Austin 1994, pet. ref'd). The evidence showed that appellant was the driver of a car from which the passenger fired four to six shots at a house and that one of those bullets killed a twelve-year-old girl. Even with the special instructions, the jury could have still found all the elements to show that appellant was a party to the murder. Because all of appellant's claims of ineffective assistance of counsel are without merit,[4] we overrule appellant's ninth point of error.

■ In his tenth point of error, appellant contends the prosecutor asked improper questions during the punishment phase of the trial. The trial prosecutor asked appellant what he would want to happen to someone who shot his little brother or sister. Appellant responded, "justice." The prosecutor continued in his questioning until he asked appellant if he would want the person who killed appellant's little brother or sister to die. This questioning was potentially improper because it invoked the death penalty into a non-capital case and asked appellant about sentence not available for his crime. However, appellant's counsel only objected on the basis that these questions were leading. Appellant did not object on the grounds that these were improper questions because they covered an improper subject. The trial court overruled the leading objection because leading questions are allowed on cross-examination. Appellant waived any error concerning whether the questions were improper by failing to make a proper objection. Because appellant has waived error, we overrule appellant's tenth point of error.

■ In the eleventh point of error, appellant contends the trial court erred because the deadly weapon finding was not specific. The jury could make a deadly weapon finding if appellant "used a deadly weapon" or "knew a deadly weapon would be used." TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon 1995). The judge asked the jury this very question. Appellant contends that the trial court erred because it did not determine if appellant "used" a weapon as opposed to "knew" a weapon would be used. There is no requirement for such a determination. Appellant relied upon Mulanax v. State, 882 S.W.2d 68, 71 (Tex.App.—Houston [14th Dist.] 1994, no pet.), which holds that the trial judge cannot infer a deadly weapon finding when a defendant is found guilty as a party. Mulanax concludes that because the judge does not know if appellant "used" a

---

**4.** We decline to address section G of point of error nine that seeks to have this Court analyze trial counsel's conduct to determine whether trial counsel made improper objections, non-specific objections, or failed to object. Appellant bears

the burden to specifically direct the attention of this Court to the error about which complaint is made. TEX.R.APP.P. 74(d). Because he fails to direct this Court to a specific complaint, he waives review.

weapon or "knew" a weapon would be used, the judge cannot make a finding on his own but is required to ask the jury to make a specific finding. The trial court, in this case, did just that by submitting a special issue during the punishment phase. The jury made a proper deadly weapon finding. The judge does not, as appellant alleges, have to ask the jury to decide if it was under the "used" or "knew" prong. The deadly weapon finding was proper. We overrule the eleventh point of error.

 Finally, this case also includes an procedural twist. As noted in the discussion of the fourth point of error, Osorio's confession was never admitted but the officer did discuss it to rebut a misrepresentation created by appellant's counsel. Appellant's appellate counsel requested that this Court supplement the record with Osorio's confession to support his argument under the fourth point of error. We granted the motion and ordered the district clerk to supplement the record. The deputy district clerk could not find the confession in appellant's file so she retrieved it from Osorio's file. She then filed a supplemental transcript with this Court.

The State moved to amend the record by deleting the confession because it was never admitted at trial and should not have been part of the record. We ordered a hearing in the trial court to determine if the confession was admitted and should have been part of the record. At this hearing, the court reporter and prosecutor testified that the confession was not admitted. The deputy district clerk testified that she retrieved the confession from Osorio's file and that it was not part of appellant's file. The trial court made findings of fact and conclusions of law. The confession was removed from the record. In his twelfth through fourteenth points of error, appellant argues that the confession should have been part of the record either because it was "offered" into evidence or because the procedure to amend the record to remove it was improper. The purpose of amending the record is to create an **accurate** record on appeal. TEX.R.APP.P. 55(a). The rule provides:

Any inaccuracies may be corrected by agreement of the parties; should any dispute arise, after filing in the appellate court as to whether the statement of facts accurately discloses what occurred in the trial court, the appellate court shall submit the matter to the trial court, which shall, after notice to the parties and hearing, settle the dispute and **make the statement of facts conform to what occurred in the trial court.** (emphasis added).

The confession was not part of the record because it was not admitted at trial. The record should not contain inaccurate information because of a clerical error made in supplementing it. The confession was not admitted at trial and the record should not have been amended to include it. If the confession were included in the record, the record would not conform to what occurred in the trial court. Because the trial court properly determined that the record should not have been amended to include the codefendant's confession, we overrule appellant's twelve through fourteen points of error.

We affirm the judgment of the trial court.