**Steven Paul DERBY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–96–01083–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 11, 1997.

Rehearing Overruled Jan. 30, 1998.

Mike DeGeurin, David B. Gerger, Houston, for Appellant.

John B. Holmes, Kimberly Aperauch Stelter, Houston, for Appellee.

Before HEDGES, COHEN and WILSON, JJ.

## OPINION

HEDGES, Justice.

Appellant pleaded not guilty to possession of methamphetamine with intent to deliver. The trial court found him guilty and assessed punishment at 10–years probation and a $5,000 fine. On appeal, appellant contends that the trial court erred in denying his motion to suppress. We affirm.

## FACTS

On March 25, 1988, DEA agents saw appellant purchase one gallon of acetone and five gallons of ether from a chemical supply company. Both of these chemicals are commonly used in the manufacture of methamphetamine, a controlled substance. After the purchase, the agents followed appellant to property in north Harris County. Appellant traveled a very circuitous route to his destination.

Upon arrival at the property, appellant left his vehicle and unlocked the gate to a dirt road, designated as Plaza 290 Boulevard, which traversed the property. Appellant testified by affidavit that he leased the property, consisting of 116 acres, undeveloped except for the road. He himself placed the gate restricting access to Plaza 290 Boulevard. One side of the gate was fenced and had a sign reading "KEEP OUT/NO TRESPASSING." The other side of the gate had no fencing and was open to foot traffic. Appellant reentered his vehicle and drove through the gate. Appellant then locked the gate and drove 1.5 miles to his trailer.

Shortly thereafter, agents Mundy and Lewis skirted the fence and proceeded on foot in the direction appellant had driven. They located appellant's truck and established surveillance of appellant's trailer at a distance of 75 to 100 yards. The agents saw appellant walk in and out of the trailer in order to dispose of what appeared to be chemical waste. They also detected a distinctive odor, which they recognized as phenylacetone, a precursor compound used in the manufacture of methamphetamine. The agents also viewed a generator providing the trailer with electricity and aluminum foil covering the windows, and heard glasses clanging and boxes being moved.

A few hours later, the agents stopped and detained appellant as he left the property. During the detention, the agents smelled a strong odor of phenylacetone emanating from appellant. He was uncooperative and offered no explanation for the odor.

Based on the observations of the agents, a search warrant was issued. During the resulting search, agents recovered 41.86 grams of methamphetamine and quantities of chemicals used in its manufacture.

## Burden of Proof

■■■ Searches pursuant to a facially valid warrant are presumed to be legal. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986). It is the defendant's burden to establish the infirmity of the warrant or its execution. *Blondett v. State*, 921 S.W.2d 469, 472 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). In this case, the State acted pursuant to a facially valid warrant. In challenging the search, appellant argues that although the warrant was facially valid, its supporting affidavit was based on tainted information: information illegally obtained in violation of TEX.CODE CRIM. P. ANN. art. 38.23 (Vernon Supp.1998). It is appellant's burden to establish the illegality by competent evidence. *Blondett*, 921 S.W.2d at 472–73.

## Motion to Suppress

In two points of error, appellant contends that the trial court abused its discretion in denying his motion to suppress the evidence obtained pursuant to the search warrant because the warrant was issued based on illegally obtained information.

### Standard of Review

■■■ The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse of discretion. *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim.App.1991). At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Brooks v. State*, 830 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1992, no pet.). The trial judge may choose to believe or disbelieve any or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim. App.1996). The evidence is viewed in the light most favorable to the trial court's ruling. *Whitten v. State*, 828 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

## Criminal Trespass

■■■ In point of error one, appellant argues that the evidence should be suppressed because the warrant was based on information obtained in violation of TEX.PENAL CODE § 30.05 (Vernon Supp.1998), criminal trespass. He contends that under TEX.CODE CRIM. P. ANN. art. 38.23, the evidence obtained during this trespass is inadmissible.

A person commits criminal trespass if he knowingly, intentionally, or recklessly enters the property of another without effective consent, and he has notice that the entry is forbidden. TEX. PENAL CODE ANN. § 30.05 (Vernon 1994); *Moreno v. State*, 702 S.W.2d 636, 639 (Tex.Crim.App.1986); *Delosreyes v. State*, 853 S.W.2d 684, 689 (Tex.App.—Houston [1st Dist.] 1993, no pet.). Appellant bases his assignment of error on his assertion agents trespassed on the private road leading to his trailer. The State counters that appellant did not establish that the agents trespassed on his private property.

In support of his motion to suppress, appellant offered his own affidavit and the search warrant affidavit. The trial court had before it a stipulation of evidence, offered by the State as evidence of appellant's guilt.

■■■ In his affidavit, appellant swore that he had leased 116 acres of land in north Harris County. He attached a plat of the property. He testified that the property was unimproved except for a dirt road designated "Plaza 290 Boulevard." He described the fencing of the property and identified a gate he had placed across the entrance to the road. He constructed the gate to prohibit horseback riding on his property. He also erected a "KEEP OUT/NO TRESPASSING" sign on the gate. When he was detained by the agents, they were outside the gate, and he was inside the gate.[1] He gave them no consent to search his property.

---

1. The judge, as the sole trier of fact, did not have to believe appellant's affidavit testimony. *Green*, 934 S.W.2d at 98; *See State v. Johnson*, 896 S.W.2d 277, 293 (Tex.App.—Houston [1st Dist.] 199, *aff'd* 939 S.W.2d 586 (Tex.Crim.App.1996))(Cohen, J. concurring).

The plat attached to his affidavit is reproduced below. *See Appendix A.* According to appellant's affidavit, the double solid lines represent fences, and the single solid lines designate unfenced property lines. There is no scale reference provided, although evidence established that the property encompasses 116 acres and the trailer is one and one-half miles from the gate by way of Plaza 290 Boulevard.

The affidavit in support of the search warrant states that the agents kept appellant under surveillance until he reached his travel trailer, described as a private residence located 1.5 miles west of Mueschke Road on Plaza 290 Boulevard at the dead end. They continued surveillance for several hours. They reported detecting a strong chemical odor associated with the manufacture of controlled substances.

In the affidavit incorporated in the stipulation of evidence, the agents testified as follows:

Agent Mundy observed [Derby] cross 2920 onto Mueske Road southbound and the defendant traveled approximately 3 miles, where he (Derby) pulled onto a dirt road identified as Plaza 290. Derby exited the truck and unlocked a barbed wire gate then drove through the gap and locked it behind him, and proceeded down Plaza 290. Agents observed that the barbed wire to be a gate in front of the road (Plaza 290) itself; there was no fence surrounding the property. There was a fence to one side of the gate; the other side was unfenced or open to foot traffic. Agents Mundy and Lewis then entered the property via the unfenced access to the property. Agents at approximately 12:40 p.m., located Derby's truck approximately 1.5 miles from Mueske Road on Plaza 290. . . . Agents Mundy and Lewis established foot surveillance on the trailer from a distance of about 75 to 100 yards from the trailer.

A careful reading of the evidence reveals that appellant never proved that the agents trespassed on his property. All he says in his own affidavit is that he had an expectation of privacy within his property and that the agents initiated his detention when he was inside the gate but the agents were without. He himself never testified that the agents criminally trespassed on his property.

In the affidavit supporting the warrant, the agents never identify their exact position. It is clear from the plat attached to appellant's affidavit that the agents could have traveled to within surveillance distance of appellant's trailer and never entered appellant's property. Adjoining tracts were unfenced, and given the configuration of appellant's property, were easily within sight of the trailer.

The testimony in the stipulation of evidence affidavit is no less certain in its description of the agents' location. While the agents recite that they entered the "property" by way of the unfenced access, the specific identification of which "property" is absent. Appellant's plat shows surrounding unfenced tracts which are outside the boundaries of his leased premises. The agents never admit that they trod upon Plaza 290 or that they maintained surveillance on property belonging to appellant. Without evidence that the agents were present on his own property, appellant has failed to establish criminal trespass. Therefore, the information upon which the warrant was based was not obtained in violation of law.

We overrule point of error one.

### Illegal Detention

In point of error two, appellant argues that because the warrantless detention was illegal, any information resulting from this detention violated TEX.CODE CRIM. P. ANN. art. 38.23 and cannot support a search warrant. Therefore, the evidence obtained from the trailer pursuant to the search warrant should be suppressed.

We have held that appellant did not establish that the agents criminally trespassed on his property. There is no evidence that the agents were where they were not supposed to be. Information developed before and during the surveillance provided reasonable suspicion that appellant had recently engaged in criminal activity. Therefore, the detention was legal. *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

Appellant complains that the detention, from 3:15 p.m. until 6:00 p.m., was unnecessarily long. Assuming that assertion to be true, appellant cannot show that he was harmed. The warrant affidavit information generated from the detention was as follows: "Mr. Derby had a strong odor on his body which is associated with the illegal manufacture of controlled substances. Mr. Derby was very uncooperative as he was detained and could not explain the odor." This information was surely obtained in the first moments of the detention; therefore, no fruits of a lengthy detention were used against appellant. Even if we excise those facts from the affidavit, there is more than enough basis to support the issuance of a search warrant. *See Franks v. Delaware*, 438 U.S. 154, 157, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). The trial court did not abuse its discretion in overruling appellant's motion to suppress.

We overrule point of error two.

We affirm the judgment.

WILSON, J., dissents.

WILSON, Justice, dissenting.

The majority predicates its opinion upon the assertion that appellant did not prove that the officers were on his property while they were conducting their visual observation of appellant's property. However, I find nothing in the record to indicate that the location of the officers on appellant's property was an issue disputed before the court below in the manner suggested by the majority. For this reason, I respectfully dissent.

What the evidence reasonably shows is that the officers saw appellant open the gate to the Plaza 290 Road, go through it, and then close it behind him. The officers then went around the gate, and walked down the road over a mile until they came upon the trailer and appellant's vehicle. They observed the trailer, located on a 116 acre track of land, from a distance of 75–100 yards for several hours. There is no evidence in the record to indicate the agents left the roadway to the degree that would have taken the agents off appellant's property they had without doubt entered. I would suggest it is speculation that the officers left appellant's property after entering.

The primary issue briefed and argued before us, complete with evidentiary exhibits, was whether the Plaza 290 Road was a public road, if the officers had a right to be there, or was it a private road as appellant contends—not the physical location of the officers during their observations. Without findings of fact and conclusions of law, we necessarily speculate as to the reasoning behind the judge's decision, but given the evidence in the case, I cannot say that the judge's denial of appellant's motion to suppress could have been based on a factual proposition that the officers in question were not on appellant's property at the time of the observations.

# Appendix A