Opinion issued June 17, 2010.

 

 



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-08-00406-CR

———————————

Joe Veloz, Appellant

 

V.

 

State of Texas, Appellee



 



 

On Appeal from the 506th District Court

Waller County, Texas



Trial Court Case No. 08-02-12794

 



 

 

 

 

 

MEMORANDUM  OPINION

A jury convicted appellant, Joe
Veloz, of murder, rejecting his claim of self-defense and assessing punishment
at 20 years in prison.  See TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2003). 
In his second point of error, appellant asserts that the evidence
presented at trial was legally and factually insufficient to uphold his
conviction.  In his first point of error,
appellant contends that the trial court erred in overruling his motion for
mistrial based on the prosecutor’s jury argument that misstated the burden of
proof for a claim of self-defense.   We
affirm.

BACKGROUND

Appellant was a temporary worker outside Brookshire, Texas
when he first met Robert Shows at the Executive Inn Motel, where both were
staying the night of September 30, 2006. 
That night, appellant was in Shows’s room when Shows, “kind of scared,”
told appellant that he, Shows, owed some $40 to an unidentified “big guy, black
guy” and was afraid that he could not pay it back.  Though appellant suspected Shows of wanting
the money to buy drugs, appellant lent Shows $50 on the understanding that he
would return it later that night after his claimed troubles had passed.  

When appellant returned to Shows’s room in the early hours of
October 1 in search of repayment, Shows began a tirade against “Mexicans” and
“illegals” taking money and jobs.[1]  In his trial testimony, appellant claimed
that as the exchange escalated, Shows “got loud and . . . started getting in
[appellant’s] face.”  Appellant recounted
that Shows then got up and grabbed a steak knife (“the first knife”) from the
table at which they were seated, saying “I got something for you . . . or
something to that effect.”  Appellant
claimed that he squeezed a nerve in Shows’s wrist and forced him to drop the
first knife, which appellant then grabbed before stepping away in an attempt to
defuse the situation.  Shows then turned
and grabbed another knife (“the second knife”) from behind him and began to
turn back toward appellant with apparent intent to kill.  Realizing that “it was either going to be me
or him,” appellant stabbed Shows “in his back or shoulder” with the first
knife, breaking off its handle.  As the
two continued to struggle, appellant wrested the second knife away from Shows
and stabbed him numerous times, at least once lethally, in the front of his
body.  In total, appellant inflicted 14
stabbing wounds, covering Shows’s back, neck, abdomen, and arms.

The police arrived late that morning upon receiving a call
from a housekeeper who had entered Shows’s room to the sight of Shows’s body
near the sink.  Appellant approached the
officers and told them “what had happened,” but said nothing of his own
involvement in the incident.  After the
police brought him back to the station for questioning, appellant related the
substance of his trial testimony to the interrogating officer, Oscar
Garcia.  Appellant testified that Garcia,
because he suspected appellant of covering for someone else, told him that he
would be “screwed” if he maintained his story. 
Appellant therefore “admitted” that another man, Julio Ibarra, was the
true culprit.  This was appellant’s first
statement to the police (“the first statement”).

Later, however, appellant dictated and signed a second
statement (“the second statement”) admitting his own role, but contradicting
his later trial testimony in a number of important ways.  For example, in the second statement,
appellant said that he had given Shows the money not in response to Shows’s pleas,
but, rather, to buy cocaine for appellant’s use, and that he had been angry at
Shows because “the cocaine had been stepped on pretty bad.”  In the second statement, appellant described
himself, not Shows, taking the first knife off the table in an attempt to
preempt his adversary, who had merely “acted like” he was going to grab it
first.  Appellant described in that
statement how he had immediately spun his adversary around and, losing his
footing, was unable to keep from stabbing Shows in the back.  The second statement explained that because
appellant “thought” that Shows was going to try to grab the second knife,
appellant went over the top of Shows to preempt him.  While appellant testified at trial that he
had found Shows’s wallet empty, in the second statement he reported that he
found and took $50 from Shows’s wallet after the fight was over, seeing it as
“just payback for the money that was taken from [him] on [sic] the
cocaine.”  At trial, appellant claimed
that each of these discrepancies was a misstatement or a distortion and
that—contrary to the testimony of the recording officer—appellant had not read
the statement or had been too tired to understand it before signing. 

SUFFICIENCY OF THE EVIDENCE

In point of error two, appellant contends that the evidence
was both legally and factually insufficient to support the rejection of his
claim of self-defense.  

A.      Legal
sufficiency

When a legal sufficiency challenge pertains to the rejection
of a defensive claim, we apply the same standards used in reviewing the
sufficiency of the evidence to support a guilty verdict.  Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). 
We consider all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  In doing so, we give deference to the factfinder
to resolve conflicts in testimony fairly, to weigh evidence, and to draw
reasonable inferences from the facts.  Id. 
However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal
offense of which he is accused.  Id.

A person is justified in using deadly force against another:

 

          (1)     if the actor would be justified in using force against the other
under Section 9.31;[[2]] and

          (2)     when and to the degree the actor reasonably believes the deadly
force is immediately necessary:

 

                   (A)    to protect the actor against the other’s use
or attempted use of unlawful deadly force; . . . .

 

TEX. PENAL CODE ANN. § 9.32(a) (Vernon 2003).  Deadly force is that
intended or known by the actor to cause, or in the manner of its use or
intended use is capable of causing, death or serious bodily injury.  Id.
§
9.01(3) (Vernon Supp. 2009).  A “reasonable belief” is one that would be
held by an ordinary and prudent man in the same circumstances as the actor.  Id. § 1.07(a)(42) (Vernon 2003).  

A defendant asserting a claim of self-defense bears the
initial burden of producing some evidence in support of his contention; if he
meets this burden, the State then takes on the burden of persuasion to disprove
the raised defense.  See Zuliani
v. State, 97
S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton, 804 S.W.2d at 914.  The State’s burden of persuasion, however, “is not one that requires
the production of evidence, rather it requires only that the State prove its
case beyond a reasonable doubt.”  Zuliani, 97 S.W.3d at 594.  When
a jury finds a defendant guilty, there is an implicit finding against the
defensive theory, as well.  Id. 

In support of his legal-sufficiency challenge, appellant
emphasizes that no testimony offered at trial directly contradicts his
testimony that he acted in self-defense. 
This alone does not render the evidence insufficient.  
See Denman v. State, 193 S.W.3d 129,
133 (Tex. App.—Houston [1st Dist.] 2006, pet ref’d) (citing Sells v. State, 121 S.W.3d 748, 754
(Tex. Crim. App. 2003)).  As we noted in Denman, the proposition that, as a
matter of law, no rational jury could find against a defendant who was the only
witness to his alleged crime merely because of his own testimony that he acted
in a legally permissible manner would contradict our principle of deference to the
factfinder’s credibility determinations. 
Id.  The jury’s credibility
determinations must nonetheless have some basis in the record to justify a
finding against a defensive theory.  See Sells, 121 S.W.3d at 754 (noting
other circumstances from which a rational jury could have inferred specific
intent).  

Viewed in the light most favorable to the verdict, there was
some evidence from which a rational jury could have inferred guilt and from
which it could have formed a rational doubt about the credibility of
appellant’s testimony.  For example, in
his first statement, appellant falsely accused another man of having committed
the murder.  Appellant’s second statement
recounted the events of that night in terms far less indicative of self-defense
than those of his trial testimony, asserting, for example, that Shows had
merely “acted like” he was going to grab the first knife and that appellant had
only “thought” Shows would grab the second. 
The second statement contradicted appellant’s trial testimony in other
ways as well, describing, for example, a complex back-story to the incidents of
that night in which appellant was angry with Shows for having failed to deliver
certain drugs.  Moreover, the location
and abundance of the knife wounds on the victim’s body suggested that appellant
acted as an aggressor and not in self defense: as Harris County medical
examiner Dr. Dwayne Wolf testified, many of the wounds on the victim’s arms and
hands appeared defensive.  The fact that
appellant checked Shows’s wallet after having killed him, too—combined with
appellant’s second statement, in which he said that he had taken $50 from the
wallet as “just payback for the money that was taken from [him] on [sic] the cocaine”—could
have formed an independent basis for a rational conclusion that appellant did
not act in self-defense.  Viewing the
evidence in a light most favorable to the verdict, we hold that a rational jury
could have rejected appellant’s claim of self-defense and found him guilty of
murder.

We overrule the legal-sufficiency challenge under point of
error two.

B.      Factual
Sufficiency

In a factual-sufficiency review, we examine all of the evidence
in a neutral light and ask (1) whether the State’s evidence, taken alone, is
too weak to support the finding; or (2) whether the proof of guilt, although
adequate if taken alone, is against the great weight and preponderance of the
evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000); see Zuliani, 97 S.W.3d at 594
(applying Johnson’s factual
sufficiency analysis to defenses).  Under
this standard, we cannot declare that a conflict in the evidence justifies a
new trial merely because we disagree with the jury’s resolution of that
conflict.  Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006).  The factfinder alone determines what
weight to place on conflicting testimony because that determination depends on
the factfinder’s evaluation of witnesses’ credibility
and demeanor.  Cain v. State, 958 S.W.2d 404, 408–09
(Tex. Crim. App. 1997).  As
the sole determiner of the credibility of the
witnesses, the factfinder may choose to believe all, some, or none of the
testimony presented.  See id. at
407 n.5.

Appellant argues that “the facts that most undermine the
jury’s verdict are that no one refuted [appellant’s] testimony that the
decedent came at him with a knife on the first provocation and he attempted to
stab him with another knife on the second provocation even after [appellant]
wrestled [sic] the first knife away from the decedent.”  However, the discrepancies between
appellant’s two post-arrest statements and Dr. Wolf’s testimony regarding the
number and nature of the wounds inflicted provided adequate factual basis for a
rational jury to conclude that appellant’s claim of self-defense was not
credible.  See Matos v. State, No. 01-06-01005-CR, 2008 WL 659832, at *8 (Tex.
App.—Houston [1st Dist.] March 13, 2008, no pet.) (not designated for
publication) (citing multiplicity of stabbing marks and presence of defensive
wounds in overruling factual-sufficiency challenge to jury’s rejection of claim
of self-defense); Gutierrez v, State,
85 S.W.3d 446, 450 (Tex. App.—Austin 2002, pet. ref’d) (citing, inter alia, the
presence of defensive wounds on victim’s hands in overruling
factual-sufficiency challenge).  Viewing
the record neutrally, we conclude that the jury’s verdict was not so contrary
to the great weight and preponderance of the evidence that it was rendered
unjust.  

We overrule the factual-sufficiency challenge under point of
error two.

MISTRIAL

In point of error one, appellant complains that the trial
court erred in overruling his motion for mistrial asserted when the prosecutor
misstated the burden of proof for self-defense in her closing argument at the
guilt-innocence stage of the trial.  To
preserve error regarding improper jury argument, a defendant ordinarily should
(1) contemporaneously object to the statement; (2) request an instruction that
the jury disregard the statement if the objection is sustained; and, (3) move
for a mistrial if the instruction is granted. 
Cooks v. State, 844 S.W.2d
697, 727–28 (Tex. Crim. App. 1992); Dominguez
v. State, 125 S.W.3d 755, 763 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d).  However, this sequence is not
essential to preserve complaints for appellate review; the essential
requirement is a timely, specific request that the trial court refuses.  Young
v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).  Even if a defendant obtains no explicit
adverse ruling on his objection, the denial of a motion for a mistrial will
suffice to preserve error.  See Archie v. State, 221 S.W.3d 695, 699
(Tex. Crim. App. 2007); Young, 137 S.W.3d
at 70 (upholding review of the denial of a motion for a mistrial even when
trial court had never directly responded to defense counsel’s objection). 

However, when a defendant’s first action is to
move for a mistrial, review is limited to the question of whether the trial
court erred in not taking the most serious action of ending the trial.  Young, 137 S.W.3d at
70.  Harm from improper jury argument warrants
a mistrial only if (1) it is extreme, improper, injects new and harmful facts
into the case, or violates a mandatory statutory provision and (2) as a result,
is so inflammatory that its prejudicial effect cannot reasonably be cured by an
instruction to disregard.  Thompson
v. State, 89 S.W.3d 843, 851
(Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing Long
v. State, 823 S.W.2d 259,
267 (Tex. Crim. App. 1991)).  We review a trial court’s denial of a motion
for a mistrial under an abuse-of-discretion standard.  Webb v.
State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  

The
prosecutor addressed the jury as follows: 

The State has the burden of proofing [sic] Joe Luis
Veloz guilty of the murder of Robert Allan Shows.  Yes, we do. 
We have taken that willingly; but this self-defense issue is something
that can only come to you from the defense, and it is the defense’s obligation
to show, to convince you that it was self-defense.

 

Counsel
for appellant moved for a mistrial almost immediately, objecting to the

State’s misleading and being incorrect on a statement
of the law that it is Mr. Veloz’s duty to convince them this was
self-defense.  It illegally shifts the
burden and it’s a misstatement of the law. 
I move for a mistrial.

 

The
court denied the motion for mistrial, but instructed the jury that “the law
will be provided and has been provided in the charge of the Court.” 

Appellant
argues that the trial court should have granted his motion for mistrial because
“the argument shifted the burden to [appellant] to essentially prove his
innocence” and “injected new and harmful law that exceeded the jury instruction
and significantly and unconstitutionally skewed the advantage in favor of the
[S]tate.”  Although we agree that the
prosecutor misstated the burden of proof by asserting that it was the
defendant’s “obligation to show, to convince you that it was self-defense,” we
conclude that an instruction to disregard would have sufficed to cure whatever
prejudice the remark may have caused.[3] 


Except
in extreme cases, the jury is presumed to follow instructions, including
instructions to disregard.  Rose v. State, 752 S.W.2d 529, 554 (Tex.
Crim. App. 1987), abrogated in part on
other grounds by Karenev v. State, 281 S.W.3d. 428, 434 (Tex. Crim. App.
2009).   This presumption applies to an
instruction to disregard prosecutorial misstatements of the law.  See
Blondett v. State, 921 S.W.2d 469, 474­­­–75 (Tex. App.—Houston [14th
Dist.] 1996, pet. ref’d) (“Because the trial court told the jury to disregard
[a prosecutor’s false statement of the evidentiary burden] . . . and only
listen to the judge’s instructions on the law, the trial court cured any error
caused by the improper argument.”).  The
prosecutor’s statements, which were not repeated, were not so extreme that an
instruction to disregard would not have cured them.  See
Lewis v. State, No. 01-90-00326-CR, 1991 WL 114442, at *2 (Tex.
App.—Houston [1st Dist.] June 27, 1991, no pet.) (not designated for
publication) (holding that instruction to disregard cured isolated misstatement
of burden of proof).

Because
we hold that a judicial instruction to disregard could adequately have cured
the prosecutor’s misstatement, we further hold that the trial court did not err
in denying appellant’s motion for mistrial. 


We
overrule point of error one.

CONCLUSION

We affirm the judgment of the trial court.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.

Do
not publish.   Tex. R. App. P. 47.2(b).

 











[1]           Appellant
is Hispanic.





[2]           See TEX. PENAL CODE ANN. § 9.31(b)(1), (4) (Vernon 2003).





[3]           Because
the scope of our review in this case is limited to determining whether the

trial court erred in denying appellant’s motion for
mistrial, we do not reach the issue of whether the trial court in effect
instructed the jury to disregard the prosecutor’s statement.